**LA MAUR, INC., Plaintiff,**

v.

**REVLON, INC., and Red Owl Stores, Inc., Defendants.**

**No. 4-64 Civ. 65.**

United States District Court
D. Minnesota,
Fourth Division.

July 12, 1965.

Harold D. Field, Jr., and Allen I. Saeks, of Leonard, Street & Deinard, Minneapolis, Minn., for plaintiff.

W. Lee Helms, New York City, and A. Lyman Beardsley, Minneapolis, Minn., for defendant.

NORDBYE, District Judge.

Plaintiff seeks relief for an alleged infringement of its registered trademark STYLE, issued July 23, 1963, which mark is used on hair spray and other products. There having been no showing for recovery either of punitive or compensatory damages, although requested in the complaint, the Court will consider in this decision only the relief sought by way of an injunction.

The challenged products are a hair spray denoted as STYLE and SET and a hair setting lotion termed SET & STYLE manufactured by defendant Revlon, Inc. The hair spray STYLE and SET was distributed in Minnesota by defendant Red Owl Stores for a period of time, but on March 27, 1964, it agreed to refrain from selling any further STYLE and SET after it had disposed of its limited stock on hand, and the record would indicate that Red Owl no longer is a necessary party herein.

Plaintiff is a Minnesota corporation engaged almost exclusively in the manufacture of chemical products for feminine hairdressing, primarily hair sprays, hair setting lotions, waving lotions and various other hair fixatives. Defendant is a well-known manufacturer of a large number of products designed for female beauty use, including hair fixatives. Its products enjoy nation-wide distribution and reputation.

Prior to 1944, plaintiff was engaged in selling its products exclusively to what has been termed the "professional trade"; that is, the hair fixatives were sold to beauty supply dealers for use by beauty operators in the course of their business. After that date, plaintiff released extensive merchandise into all retail channels handling cosmetics. In its retail distribution, La Maur first confined its attention to the southwestern United States, then the west, and moving from the west coast eastward until approximately three years ago when the eastern market was penetrated. At the present time, therefore, plaintiff has its products distributed throughout the nation.

The product principally involved in this action is La Maur's hair spray denoted as STYLE, a product which has met with great commercial success. The single word "Style" was apparently first used as a mark as early as 1945 by the plaintiff on a setting lotion. That use was, however, discontinued in 1950 and since that time STYLE has been used almost exclusively in connection with La Maur's hair spray packaged in an aerosol can. La Maur then distributed a setting lotion, not in an aerosol can, but bottled in liquid form designated as STYLAST. Thus, at approximately the time La Maur was entering the retail channels of trade, the mark STYLE was being used on the aerosol hair spray and the setting lotion was marketed under the derivative term STYLAST. These articles were marketed originally as produced by Modart rather than La Maur. In the early period of the company's existence the name

"Modart" was used as identification of the source of origin in La Maur's marketing to the professional trade and is currently used on many of its products for retail distribution.

Plaintiff has put out a great variety of merchandise under the trademark STYLE other than the principal hair spray product. La Maur has a series of wave sets denoted as Natural Style, Silver Style, Tint Style, White Style and Teen Style. There also is a variety of STYLE shampoos, a STYLE nail polish remover and a STYLE "creme rinse". In addition, the mark STYLE has also been used with various suffixes on other products, as STYLAST, a setting lotion; STYLON, a molding and setting lotion; and STYLIST, a molding and setting lotion concentrate. In addition, since June, 1964, La Maur also has marketed an aerosol hair spray in an unscented formula under the name STYLAST, indicating that the product is "From the House of Style." Thus, the STYLAST characterization has been used on both a hair spray and the setting lotion. As previously stated, the mark STYLE was last used on a setting lotion in 1950. It was last marketed in 1951, but the mark STYLAST is being used by plaintiff on its setting lotion at the present time.

The essential question is whether the marks alleged to infringe are likely to cause confusion as to the source of origin of the goods in the minds of "ordinary purchasers, buying under the usual conditions prevailing in the trade, and giving such attention as such purchasers usually give in buying that class of goods, * * *." Queen Mfg. Co. v. Isaac Ginsberg & Bros., Inc., 25 F.2d 284 (8 Cir. 1928). In that case the court made the following statement, at p. 287,

"In order to constitute an infringement, it is not necessary that the trade-mark be literally copied. * * * Neither is it necessary that every word be appropriated. There may be infringement where the substantial and distinctive part of the trade-mark is copied or imitated. * * * Dissimilarity in size, form, and color of the label and place where it is applied are not conclusive against infringement. * * * Where a trade-mark contains a dominating or distinguishing word such as the word 'Queen' in the instant case, and where the purchasing public has come to know and designate the article by such dominating word, the use of such word by another in marking similar goods may constitute infringement, although the latter mark, aside from such dominating word, may be dissimilar."

Similarities in appearance, meaning or sound in the marks are of course important considerations. Any similarity in pronunciation, that is, that the marks are sound-alikes, is, however, minimized when, as here, the product is often purchased in a self-service cosmetics department and not by request to a salesclerk. See Southern Shellfish Co., Inc. v. S. Felicione & Sons Fish Co., Inc., 108 U.S.P.Q. 289 (Comm'r 1956).

Plaintiff introduced testimony taken by a poll conducted in four supermarkets in the Twin Cities carrying hair fixatives in an attempt to establish confusion as to source of origin between a can of STYLE hair spray and a can of Revlon STYLE and SET hair spray. The poll-taker would stop a person in the store, not at the counter carrying hair fixatives, and showing a can of STYLE and a can of STYLE and SET side by side, ask whether the interviewee thought the products were made by the same or different companies. The answers were to the overwhelming effect that the two products were made by the same company. Every answer was recorded on written forms which, together with the tabulated results, were offered in evidence. The current view is that objections to such poll evidence go to the weight to be accorded to it, not its admissability. See, e. g., Miles Laboratories, Inc. v. Frolich, 195 F.Supp. 256 (S.D.Cal.1961). See generally Public Opinion Surveys as Evidence: The Pollsters Go to Court, 66 Harv.L.Rev. 498. The poll evidence fairly sustained plain-

tiff's contention that, as between STYLE and STYLE and SET, there would be consumer confusion. No poll evidence was introduced on the question of confusion for SET & STYLE, plaintiff contending that if STYLE and SET will cause confusion, it would follow that SET & STYLE will also.

■ Although in trademark law prior decisions have almost no definitive ruling effect, as each case invariably presents its own unique facts, see, e. g., L. J. Mueller Furnace Co. v. United Conditioning Corp., 222 F.2d 755, 42 CCPA 932 (1955), weight can be given a prior determination when the plaintiff's trademark has been tested against an infringer employing a trademark similar to that employed by the defendant in the instant case. In Wella Corp. v. La Maur, Inc., 312 F.2d 831 (CCPA 1963), La Maur was successful in having the Wella mark for a hair setting lotion termed STYLE–TEX cancelled. The court held that the goods were similar, and that since Wella adopted the whole of La Maur's mark and added the meaningless TEX suffix, STYLE was the dominant feature of Wella's mark and therefore "confusion, mistake or deception of purchasers would be quite likely to occur." Revlon contends that the Wella case is not applicable here as its marks do not employ the word "Style" as the dominant feature and its additional "and Set" are differentiated from the use of "Tex" as they are meaningful, being suggestive of the use of the products. However, in the Wella case the court stated, at p. 831,

"It is not disputed that La Maur has used the word 'Style' since 1945 as its trademark on hair setting and holding spray products, marketed in substantial volume throughout the country to beauty salons and the general public.

"Since La Maur's priority of use is not questioned, and the goods are similar, the sole issue is one of likelihood of confusion within the meaning of Section 2(d) of the Lanham Act.

"It is clear, as the board observed in sustaining La Maur's petition, that 'Style' is the whole of La Maur's mark and the prominent, if not the dominant, feature of Wella's mark. We think it equally clear that when those marks are used on the instant products, confusion, mistake or deception of purchasers would be quite likely to occur."

La Maur has introduced a superabundance of evidence proving that the La Maur mark STYLE has a strong secondary meaning. During its corporate existence of over twenty years, La Maur has done extensive advertising of its mark STYLE; the product has nation-wide distribution and there has been extensive testimony of customer recognition of the mark in the retail trade and overwhelming acceptance in the professional trade. The third-party registrations introduced by defendant do not detract from that secondary meaning.

Rather than being a descriptive mark, STYLE is what has been termed by the defendant as a suggestive mark, suggesting that it may help the purchaser "style" her hair. Of course, the word "style", being lifted bodily from common usage, could be considered suggestive not only of hair fixatives, but a myriad of other products as well. It is equally clear that both of the defendant's marks involved herein, STYLE and SET and SET & STYLE, also are what would be termed "suggestive". "Set" is a word commonly employed as part of a trademark when speaking of a setting lotion or a product used in setting hair. Clearly, therefore, La Maur's STYLE and Revlon's STYLE and SET or SET & STYLE have similar suggestive meanings.

It was in the year 1958 that Revlon, under the name of Evangeline Products Company, its wholly owned subsidiary, first manufactured and sold a hair spray under the label of STYLE and SET. When plaintiff discovered in 1959 that STYLE and SET was being sold on the market, its objection to Evangeline resulted in an offer by Revlon to discontinue the manufacture and sale of this

STYLE and SET hair spray under the label that it was then using. Although there is a dispute as to the scope of the agreement made by Revlon, the original label used was modified and, as modified, the production of the product STYLE and SET was resumed until September, 1960, and then suspended until about October, 1963. After the institution of this lawsuit, the defendant agreed on March 27, 1964, to refrain until the trial of this action from manufacturing and selling an aerosol hair spray product known as STYLE and SET, which was then manufactured and sold under the name of the Evangeline Products Company. At the time the stipulation was proffered and accepted by plaintiff, it was understood that Revlon was manufacturing and selling a setting lotion called "Set and Style" which product, however, was not included in the stipulation. Defendant has not, however, agreed to a consent decree as to the aerosol hair spray STYLE and SET, so we are concerned with both marks in this proceeding.

## I

### STYLE and SET

■ As stated heretofore, the alleged infringing hair spray STYLE and SET was distributed currently by Revlon with some interruption until March 27, 1964. The modified aerosol spray can was about 7 inches high and the can is distinguishable from the La Maur product in that the lettering is not in script and the coloring on the can is different. The background of the coloring is a checkered effect rather than the solid color used by La Maur. Both cans, however, have a wreath-like design about the mark. Both are aerosol cans, and of course serve identical functions and both predominantly use the name "Style". Notwithstanding the distinctions in the appearance of the cans, we have the same type of product, marked in the same manner, and ultimately destined for the same consumers, with Revlon, the secondary user, adopting the primary user's mark in its entirety, but with the addition of the two words "and Set". Where

the appropriation forms only part of the alleged infringing mark, the addition may be considered surplusage if the appropriation constitutes the salient, dominant word which the average buyer is likely to remember and associate with the origin of the goods. Lehn & Fink Products Corp. v. Magnolia Chemical Co., 95 U.S.P.Q. 57 (P.O.Ex.Chf.1952). The instant case presents this precise situation for both marks have the same suggestive meaning. The inclusion of the word "Set" in Revlon's mark, a word of common parlance in speaking of hair fixatives, is insufficent to dispel the likelihood of confusion generated by such similar titles with identical goods marketed under similar conditions, with the first user, La Maur, having shown strong consumer identification for the trademark STYLE.

## II

### SET & STYLE

■ Concededly, a more difficult question arises as to whether the setting lotion SET & STYLE infringes the trademark STYLE. SET & STYLE is, however produced under Revlon's name. It is a setting lotion in liquid form merchandised in a bottle of about 8 ounces content and about 7 inches high. The shape of the bottle and the markings thereon are distinguishable from the configurations which La Maur uses on its various STYLE products. Moreover, Revlon appears to have maintained the retail price of SET & STYLE to that of the list price marked on its bottle, i. e., $1.50, whereas plaintiff's STYLE products have been not infrequently discounted in price. While the ingredients of La Maur's STYLE and Revlon's SET & STYLE are not the same in that one is a product in an aerosol can and the other is a liquid in a bottle, they are "merchandise of substantially the same descriptive properties" within the meaning of the Lanham Act, 15 U.S.C. § 96. In that hair sprays and setting lotions are both hair fixatives, they may serve the same common or overlapping functions. A hair spray can be used to "set"

the hair for styling, although a setting lotion would more adequately perform that function. Recognizing that there are dissimilarities in the size, form and color of the two containers, these factors are not conclusive against infringement where the substantial and distinctive part of the trademark is imitated or appropriated. Moreover, Revlon, as the latecomer, should have all doubts resolved against it. See Kroger Grocery & Baking Co. v. Blue Earth Canning Co., 88 F.2d 725, 726, 24 CCPA 1098 (1937), where it was held,

" * * * we think that the ordinary purchaser, seeing a can of peas upon the shelf of a grocery store with the mark 'Country Kist' applied thereto, and being familiar with appellant's mark, might very likely be confused, giving particular attention only to the word 'Country' without giving thought to the other word of the mark of either appellant or appellee."

Where one adopts a trademark so like another in form or meaning that a potential customer who may not have a definite or clear recollection as to the real trademark, and hence becomes confused or misled, a sufficient showing has been made. Certainly, if Revlon's product merely bore the name STYLE on its hair setting lotion, there could be no question as to confusion in light of all the evidence. Consequently, it is to be strongly doubted that the addition of an ampersand and "Set" distinguishes Revlon's product so as to avoid confusion in the consumers' market. The obvious confusion in the tendency of counsel and the witnesses to become mixed up in using the phrases "Style and Set" and "Set & Style" tends to indicate that the ordinary housewife would be subject to the same confusion. See F. W. Fitch Co. v. Camille, Inc., 106 F.2d 635 (8 Cir. 1939).

When first used by La Maur, the mark STYLE may have had so little distinctiveness that it could be considered as a weak mark as distinguished from a strong mark, but by extensive use and advertising, La Maur has converted the mark STYLE into a mark by which the average purchaser is likely to conclude that any hair fixative on which it is used is a La Maur product. See Clinton Detergent Co. v. Proctor & Gamble Co., 302 F.2d 745, 49 CCPA 1146 (1962). After approximately 20 years of continuous use by La Maur of the mark STYLE, the defendant, Revlon, now has produced and marketed a hair fixative employing La Maur's mark STYLE in the phrase "Set & Style", and to a large extent the product is marketed in the same retail self-service stores. Not only is a setting lotion a product closely related to a hair spray, but a manufacturer of hair spray often may also manufacture a hair setting lotion. Such factors could readily cause a purchaser to assume upon encountering SET & STYLE in a retail outlet that it is a setting lotion put out by the makers of STYLE. See Lever Bros. Co. v. Riodela Chemical Co., 41 F.2d 408, 17 CCPA 1272 (1930); D. B. Fuller & Co., Inc. v. S. Stein Co., Inc., 112 U.S. P.Q. 11 (Comm'r 1956).

The problem created by Revlon's addition of the word "Set" is not unlike that encountered in Ex Parte Nickel Cadmium Battery Corporation, 117 U.S.P.Q. 451 (Comm'r 1958), where NICADYNE for electric batteries was refused registration in view of the prior-registered mark NICA for electrical primary and secondary cells and storage batteries. It was stated that the additional word "dyne" was not an arbitrary mark when used in this particular field and was therefore insufficient to avoid confusion.

Although the trademark STYLE may be considered as one which is not outstandingly unique and therefore some restrictions may be warranted in the area of exclusivity, the restriction should not be so narrow as to refuse to eliminate a setting lotion which uses this mark in the field where confusion as to source is most likely to occur. In Ralston Purina Co. v. Chow Mat, Inc., 123 U.S.P.Q. 415 at p. 416 (App.Bd.1959), the court stated,

"It is recognized that 'chow' is colloquially used to mean 'food' or 'a meal,' but opposer has long and extensively used it as a trademark to

identify and distinguish animal feeds of its manufacture; so that while the word has not lost its primary colloquial meaning, it has nevertheless acquired a secondary meaning which points to opposer as the producer of animal feeds on which 'CHOW' appears. The fact does not and cannot interfere with the right of the public to use the word in its colloquial sense, but applicant is not so using it. Applicant is using, and seeks to register, the word as a part of a trademark for animal feeding bowls and mats which are associated generally with animal feeds. It is this fact which leads to a conclusion of probable purchaser confusion."

The above may be considered as the Court's findings of fact, and as conclusions therefrom the Court finds that plaintiff is entitled to the injunctive relief as against Revlon, Inc., as prayed for in its complaint, together with its costs and disbursements. An appropriate order for judgment may be presented by plaintiff on ten days' notice. An exception is reserved.