**GENERAL MILLS, INC., Appellant,**

v.

**The PILLSBURY COMPANY, Appellee.**

No. 18405.

United States Court of Appeals
Eighth Circuit.

June 8, 1967.

Charles J. Merriam, Chicago, Ill., and Horace Hitch, of Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for appellant. Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., W. D. Keith, New York City, W. C. Babcock, G. O. Enockson, Minneapolis, Minn., were on the brief.

C. Willard Hayes, of Cushman, Darby & Cushman, Washington, D. C. for appellee and filed brief with Ronald E. Lund, Minneapolis, Minn.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant General Mills, Inc., from judgment entered against it in favor of plaintiff The Pillsbury Company determining Patent No. 3,038,808, hereinafter referred to as the patent, owned by The Pillsbury Company, valid and that defendant has infringed claims 1, 2, 13 and 14 of said patent in the manufacture and sale by it of angel food cake mix known in the record as Product A and sold under the commercial name of Speed-O-Angel Food Bakers' Cake Base. Defendant was enjoined from infringing on plaintiff's patent and provision was made for the ap-

pointment of a master to ascertain and report to the court as to damages sustained by plaintiff as a result of the infringement.

Jurisdiction is conferred upon the trial court by 28 U.S.C.A. § 1338(a) and § 1400. Our jurisdiction is based upon 28 U.S.C.A. § 1292(a) (4).

At the time of the filing of the complaint premixed materials alleged to be covered by the patent were sold both by plaintiff and defendant only to the bakery trade. Neither party then made premixed one-stage angel food cake mixes for use by the housewife.

Defendant first moved to dismiss the suit on the ground that the patent asserted was invalid by reason of failure to comply with 35 U.S.C.A. §§ 184 and 185. This issue was separately tried in the trial court and was separately argued upon this appeal. The trial court denied such motion for the reasons set forth in its well-considered opinion reported at 252 F.Supp. 747. We affirm the ruling of the trial court denying the motion to dismiss upon the basis of the trial court's opinion. See Minnesota Mining & Mfg. Co. v. Norton Co., 6 Cir., 366 F.2d 238.

In addition to the motion attack hereinabove discussed, defendant has by its pleadings contested the validity of the patent upon the following grounds: (1) The invention did not meet the nonobvious subject matter test of 35 U.S. C.A. § 103. (2) Lack of disclosure required by 35 U.S.C.A. § 112. (3) Public use for more than one year prior to date of patent application. (35 U.S.C.A. § 102(b)).

Defendant also denied infringement upon multiple grounds. The judgment appealed from was entered after extensive evidentiary hearing before the court. The views of the trial court are set out in an unreported memorandum opinion filed February 10, 1966. Such decision was made by the trial court prior to the significant decisions of the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 and United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572.

Pursuant to the approved prevailing practice, we first direct our attention to the issues relating to the validity of plaintiff's patent. We hold for reasons hereinafter stated that the patent does not meet the 35 U.S.C.A. § 103 nonobvious standard and that hence the asserted patent is invalid.

Graham v. John Deere Co., supra, reviews the constitutional and statutory background underlying the allowance of patents. The adverse effect of patent monopolies upon the public is noted. The court adheres to its consistent policy of imposing strict limitations upon patentability first stated in Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 as follows:

"[U]nless more ingenuity and skill * * * were required * * * than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skilful mechanic, not that of the inventor."

*Graham* holds, "Patentability is to depend, in addition to novelty and utility, upon the 'non-obvious' nature of the 'subject matter sought to be patented' to a person having ordinary skill in the pertinent act." 383 U.S. 1, 14, 86 S.Ct. 684, 692.

The Supreme Court in *Graham* rejects the contention that § 103 provides a relaxed standard of patentability, stating:

"Although we conclude here that the inquiry which the Patent Office and the courts must make as to patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in the general strictness with which the overall test is to be applied. We have been urged to find in § 103 a relaxed standard, supposedly a congressional reaction to the 'increased standard' applied by this Court in its decisions over the last 20 or 30 years. The standard has remained invariable in this Court. Technology, however,

has advanced—and with remarkable rapidity in the last 50 years. Moreover, the ambit of applicable art in given fields of science has widened by disciplines unheard of a half century ago. It is but an evenhanded application to require that those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions. The same is true of the less technical, but still useful arts. He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office." 383 U.S. 1, 19, 86 S.Ct. 684, 694.

The holdings of *Graham* and *Adams* are well summarized by Judge Blackmun in L & A Products, Inc. v. Britt Tech Corp., 8 Cir., 365 F.2d 83, 85. Many of our post-*Graham* decisions are there cited and discussed. In all of such cases, in some of which we reversed judgments finding patents valid, we determined that the nonobvious test had not been met. Our subsequent decisions are to the same effect. The Greening Nursery Co. v. J & R Tool & Mfg. Co., 8 Cir., 376 F.2d 738 (May 9, 1967); Imperial Stone Cutters, Inc. v. Schwartz, 8 Cir., 370 F.2d 425; Superior Concrete Accessories v. Richmond Screw Anchor Co., 8 Cir., 369 F.2d 353.

In upsetting a determination of patent validity in American Infra-Red Radiant Co. v. Lambert Industries, Inc., 8 Cir., 360 F.2d 977, 987, we said:

"We have held in the past and we continue to hold that 'invention will not be decided on the narrow issue of degree', and that the mere changing of form, proportions, or size will not alone constitute 'invention.' Swenson v. Boos, 156 F.2d 338 (8 Cir. 1946). This is true even though the change brought about better results. Midland Flour Milling Co. v. Bobbitt, 70 F.2d 416 (8 Cir. 1934). Society has an interest to protect in patent litigation and its interests demand that the complete protection afforded by a patent not be allowed for petty, insignificant, and obvious advances. Cuno Engineering

Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Ditto, Incorporated v. Minnesota Mining & Manufacturing Co., 336 F.2d 67 (8 Cir. 1964)."

Plaintiff urges that the trial court's decision is based primarily on factfinding and cannot be upset unless such findings are clearly erroneous. *Graham* teaches that the question of patent validity is one of law. Page 17 of 383 U.S., 86 S.Ct. 684. See Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 155–156, 71 S.Ct. 127, 95 L.Ed. 162; Imperial Stone Cutters, Inc. v. Schwartz, supra; L & A Products, Inc. v. Britt Tech Corp., supra.

It remains for us to apply the teachings of the foregoing cases to the circumstances of this case. Both plaintiff and defendant prior to the patent application herein involved had engaged inter alia in supplying prepackaged cake mixes to commercial bakers. The prepackaged mixes for angel food cakes had not been popular with bakers as a two-stage mix was required, that is, the egg whites would be first beaten separately to create a foam and then the other ingredients would be folded into such foam. The bakers found it more economical to buy the separate ingredients.

The patent claims relate to batter content. The trial court found the heart of the claimed invention to be in the portion of the patent specifications reading:

"The composition of this invention comprises an admixture of about one part cake flour, about three parts sugar and about three parts liquid egg whites, or the dehydrated solids thereof (in which case water of hydration must be supplied in order to attain the liquid phase), in combination with from about two to about eight percent of a chemical leavening composition. The method of this invention then generally comprises the steps of, admixing said flour, sugar, egg whites (and water of hydration if dried egg whites are used) and leavening composition, agitating said admixtures to blend the same, terminating the agitation prior

to development of an observable foaming of the egg whites, and then baking said agitated admixture."

When plaintiff first applied for the patent it contended that the use of chemical leavening in angel food cake batter was new, stating:

"—applicants' invention is concerned with improvements in the foam cake art, a class of goods from which those skilled in the art have historically excluded chemical leavenings in the firm though mistaken belief that their use would destroy the products."

Plaintiff also stated:

"—The point of novelty in this invention is the combination of angel food cake ingredients and a chemical leavening composition and not the quantity of leavening employed."

After the Patent Office cited a recipe from Everybody's Cook Book showing a foam cake containing soda and acid in the batter, plaintiff limited its claim to a chemical leavening composition of 2% to 8%. The trial court recognized this situation in stating:

"That the patent in suit was the first one-step angel food base using a leavening agent of soda and acids, which comprised about two percent or more of the batter prepared, seems free from doubt. It is true that the Patent Examiner, in the early stages of his consideration of the claims, made it clear that the novelty of the alleged patent was not as to the leavening agent, as such, for an angel food cake base, but that the point of novelty was the proportion of the leavening agent to the batter made from the ingredients set forth in the respective proportions in the claims of the patent which are in issue herein."

When the patent claims are construed in the light of the specifications (see United States v. Adams, p. 49 of 383 U.S., 86 S.Ct. 708), the alleged patentable advancement must be the utilization of the 2 to 8% chemical leavening component used in the batter to liberate carbon dioxide gas which along with the egg whites creates the necessary foam structure for an angel food cake in a one-step process.

It is conceded that all of the ingredients going into the cake mixes of each of the parties are old with the possible exception of the chemical leavening ingredients. The use of such leavening agent produced carbon dioxide gas which aerated and expanded the cake batter and took the place of the pre-beating of the egg whites to a foamy mixture before folding in the remaining ingredients as was done in the preexisting two-stage method.

Plaintiff's and defendant's cake mixes prior to the patent application each contained leavening agents but the aggregate thereof was something under the 2% level.

It seems clear to us that it was well known to chemists and bakers skilled in the field that carbon dioxide gas would be produced by adding acid and soda ingredients in appropriate proportions. Indeed, an article by Glabau published in a bulletin of the American Society of Bakery Engineers in December 1931, which treats extensively the subject of one-stage cake mixes, includes the following:

"After a period of rather extensive investigation, the writer collected enough data to indicate the possibility of making cake by a method in which all of the ingredients are put into the cake machine and agitated for a definite period of time. * * *

"What is true of pound cake is also true of the lighter form of cakes, and especially of sponge cake and angel cake. The lightness or the specific gravity of the mixtures depend upon the quantity of air or gas which may be incorporated either by mechanical agitation or the liberation of carbon dioxide gas as a result of the introduction of baking powder or a combination of the two."

Later in the article, the increase in volume by the use of baking powder is illustrated by graphs.

An article in the August 1957 issue of the Bakers Digest sets out a question, "Does the method of cake batter mixing (multi-stage vs. single stage) affect the type and amount of baking powder to be used for leavening?" This question is answered in part by F. D. Schoonover of the Fleischmann Laboratories as follows:

"In general, the single stage mixing procedure for cake batter requires higher levels of baking powder than the multi-stage to obtain the same baked cake volume.

\* \* \* \* \* \*

"Therefore, the amount of baking powder used will have a greater effect on final results than the type of baking powder used. However, for best results in batters mixed by either method, the use of a baking powder that has a regulated multiple action is preferred."

British Patent Specification No. 670, 415, published in 1952, relating to improvements in or relating to the production of voluminous bakery products, contains the following:

"According to another well-known method sponge cake or cake are made from a batter which is obtained by adding a baking powder, e. g., a mixture of sodium carbonate and potassium bitartrate, to a batter consisting of the above mentioned ingredients. In this case the voluminous character is not obtained by whipping air into the material, but by the carbon dioxide produced from the baking powder."

Defendant at the time of suit also manufactured an angel food cake base known as Product N which used slightly less than 2% leavening agents. Plaintiff does not claim such product infringes as it does not fall within the 2 to 8% leavening agent provisions of the patent. The trial court found that a one-stage cake mix produced by the use of Product N required longer beating and did not produce as satisfactory a cake as that produced from the plaintiff's patent. It appears to us that the necessity of the 2% limitation and the state of the prior art goes far toward establishing the obviousness of plaintiff's asserted invention.

Plaintiff places considerable reliance upon *Adams*. The opinions in *Adams* and *Graham* were written by Mr. Justice Clark and handed down the same date. As Judge Blackmun aptly points out in *L & A Products*, supra, both *Graham* and *Adams* apply the same standards with respect to nonobvious tests and constitute the Supreme Court's contribution to its indicated case-by-case development. In our view, the problems which confronted the inventor in *Adams* are far more complicated than the situation here presented. We find nothing in *Adams* which compels an affirmance under the circumstances of this case.

It is true that *Graham* states that secondary considerations such as commercial success, long felt but unsolved needs, failure of others, may have some relevancy on the obviousness issue. In Calmar, Inc. v. Cook Chemical Co., 8 Cir., 336 F.2d 110, we gave considerable weight to such factors in affirming the trial court's determination of patent validity. Nevertheless, the Supreme Court in *Graham* reverses and holds the patent invalid for failure to measure up to § 103 requirements. We feel that the case made for patent validity in *Calmar* is considerably greater than that made here.

■ In our present case, all of the elements used in plaintiff's cake mix batter were old and known. The means of creating carbon dioxide gas by use of soda and acids was known and understood at least since Glabau's writings in 1931. Such writings disclose that carbon dioxide gas could create the aerating and expansion effect on the batter previously produced by the prebeating of the egg whites. Thus, upon the basis of the prior art and disclosures, plaintiff's contribution lies in determining the proper amount and proportion of acid and soda to be added to a batter to create a successful cake by a one-stage mix. We hold that the subject matter of plaintiff's patent would be obvious at the time of the invention in view of the prior art to a person having ordinary skill in the per-

tinent art and hence, we hold plaintiff's patent is invalid.

Our decision on the § 103 issue is dispositive of this appeal. No purpose will be served by considering the other attacks made on validity. We do not reach the infringement issue as there can be no infringement of an invalid patent.

The judgment holding the patent valid and infringed is reversed and this case is remanded to the District Court for disposition not inconsistent with the views herein expressed.