**J. C. PENNEY COMPANY, INC., a Delaware corporation, Plaintiff,**

v.

**ARCTIC ENTERPRISES, INC., a Minnesota corporation, Defendant.**

No. 6–72–Civ.–260.

United States District Court,
D. Minnesota,

Sixth Division.

May 23, 1974.

John Henry Andrew, New York City, and Norman D. Arvesen, Field, Arvesen, Donoho, Lundeen & Hoff, Fergus Falls, Minn., for plaintiff.

Craig W. Gagnon and Paul R. Hannah, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendant.

MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The basic issue in this unfair competition case is whether there is likelihood of confusion between use of the mark EL TIGRE on defendant's snowmobiles and use of the mark on plaintiff's automobile tires and minibikes.

Plaintiff Penney is a Delaware corporation headquartered in New York and

is engaged in selling merchandise through retail stores and catalogs. Defendant Arctic is a Minnesota corporation headquartered at Thief River Falls, Minnesota, and is principally engaged in manufacturing snowmobiles and selling them through dealers.

The Complaint seeks injunctive and monetary relief for trademark infringement, unfair competition and violation of the Lanham Act. The Court has jurisdiction, 28 U.S.C. 1332, 1338(b). The Complaint, filed in September 1972, alleges that defendant has infringed upon plaintiff's EL TIGRE trademark by use of the mark on one of its lines of snowmobiles. Answer denying infringement has been filed and extensive discovery taken. Preliminary injunctions were denied by the court on October 6, 1972 and September 21, 1973. Trial was to the court starting March 5, 1974. Testimony was taken and numerous exhibits and depositions were submitted. The parties stipulated to most of the facts. Briefs have been filed.

Plaintiff started use of the EL TIGRE mark on its automobile tire line in 1968 and subsequently used it in connection with the merchandising of other products, but at present use of the mark is limited to plaintiff's automobile tires and minibikes.

Defendant began use of the EL TIGRE mark in 1972. Previously defendant used, and now uses, similar feline-like marks in connection with its sale of Arctic Cat snowmobiles, such as panther, cougar, lynx and cheetah. Plaintiff's automobile tires and minibikes are sold through catalogs and marketed in automotive centers under the common Penney mark, FOREMOST, and carry a Penney warranty. Defendant's snowmobile line is marketed through dealers under the general Arctic Cat insignia with warranties furnished in the Arctic Cat name.

As noted, the basic issue is whether consumers are likely to be confused or deceived by defendant's use of a mark similar to that of plaintiff's. See Sweetarts v. Sunline, Inc., 380 F.2d 923, 927 (8th Cir. 1967); 3 R. Callmann, Unfair Competition, Trademarks and Monopolies, Sec. 80 (3d ed. 1969).

■ The evidentiary considerations which are relative in assessing the elements of confusion are well stated in *Callmann* and in Polaroid Corporation v. Polarad Electronics Corporation, 287 F. 2d 492 (2nd Cir 1961) and in Sears, Roebuck and Company v. Johnson, 219 F.2d 590, 592 (3rd Cir. 1955). Factors to be considered are the degree of similarity between marks, the relative nature of products involved, the manner in which the products are provided, their respective trade channels, the degree of care likely to be employed by a consumer due to the price involved, the frequency and casualness of the purchase, whether defendant is deliberately trafficking in plaintiff's mark, and the strength of plaintiff's designation.

I am satisfied on the basis of the evidence received in the light of the controlling legal principles that plaintiff has not shown by the greater weight of the evidence that there is a likelihood of confusion in defendant's use of the EL TIGRE mark on its snowmobiles.

■ EL TIGRE is a "weak" trademark, not a "strong" one. The term is the Spanish equivalent of "The Tiger." It is not fanciful or arbitrary but rather suggestive. Literally hundreds of different marketed products use the tiger mark and tiger design, many of which are registered trademarks. That it is a weak mark was recognized by plaintiff's counsel when it sought registration. Plaintiff's reply brief before the Trademark Trial and Appeal Board urged that:

"Use of the foreign equivalent of a weak mark on defendant's product is not likely to cause customer confusion."

Penney's counsel took the position then that the commercial value of the term Tiger lies in its suggestiveness and not in its distinctiveness and stated its belief that because of the marketing of a wide variety of products under the mark it believed that "the scope of protection * * * should be limited."

Evidence reflected that the demographics and characteristics of the average snowmobile purchaser are different from those of the average purchaser of a minibike. A minibike is purchased for and used primarily by children while a snowmobile is purchased by and used primarily by adults. The buyer of a snowmobile is a knowledgeable, sophisticated adult well acquainted with the relative merits of different snowmobile lines. The evidence showed that 90% of the purchasers had previously owned a snowmobile.

Penney's housemark, FOREMOST, and the J. C. Penney name normally are used in conjunction with the sale of EL TIGRE tires and minibikes while the name Arctic Cat, is used in connection with the advertising and sale of snowmobiles, thus, Arctic Cat EL TIGRE, Arctic Cat Panther, Arctic Cat Lynx and Arctic Cat Cheetah.

There is a substantial difference in the price for which the products of the two parties are sold. Penney's FOREMOST EL TIGRE tires sell for under $40 and its minibikes for $449 while Arctic Cat EL TIGRE model snowmobiles sell for an average price of $1,500.

Automobile tires and minibikes on the one hand and snowmobiles on the other are markedly dissimilar and sold in separate markets. Plaintiff's EL TIGRE tires and minibikes are sold only in Penney automotive centers and through catalogs. The automotive centers are located in large metropolitan markets, usually in suburban shopping centers. These centers concentrate their sales efforts on automotive car parts and accessories.

On the other hand, Arctic sells its snowmobiles only through authorized dealers numbering about 1750. They are usually "small businesses" located primarily in rural communities throughout the northern snow belt states. Although defendant's EL TIGRE snowmobiles are sold by plaintiff in Alaska, the products of the two parties customarily are not sold in the same market place.

There was no evidence as to actual confusion by the public. In November 1972 plaintiff sent a memorandum to all Penney's stores which handled EL TIGRE products asking employees to be on the alert for any instance of actual or possible confusion between the products of plaintiff and defendant. Up to the date of trial no evidence of confusion was reported by any of the Penney's stores which handle EL TIGRE tires and minibikes.

There was no showing of bad faith or negligence by defendant or of deliberate action by it to traffic in, or profit from plaintiff's use of the mark.

In summary, I find that EL TIGRE is a "weak" mark and, under the decisions, entitled to only limited protection upon a strong showing: use of the Penney name and housemark, FOREMOST by plaintiff and of Arctic Cat by defendant in connection with the mark EL TIGRE negatives the likelihood of confusion; the products of the respective parties are marketed through different channels and ordinarily do not meet in the market place; the difference in sales price between defendant's snowmobile and plaintiff's tires and minibikes is great; the purchasers and users generally are of a different age and class; and the snowmobile buyer is knowledgeable and sophisticated and not likely to be confused in making his purchases.

I find no evidence of confusion or likelihood of confusion.

I conclude that the plaintiff has failed to establish that defendant's use of the

mark EL TIGRE constituted trademark infringement or unfair competition.

The foregoing shall constitute the Court's findings of fact and conclusions of law and the Clerk is directed to enter judgment for the defendant.