**CARDIAC PACEMAKERS, INC., Plaintiff,**

v.

**CORATOMIC, INC., Defendant.**

No. Civ. 3–78–207.

United States District Court, D. Minnesota, Third Division.

March 31, 1982.

---

Orrin M. Haugen, Haugen & Nikolai, Minneapolis, Minn., Timothy J. Malloy, Bradley J. Hulbert, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., for plaintiff.

Robert J. Hennessey, Larkin, Hoffman, Daly & Lindgren, Ltd., Robert W. Gutenkauf, Burd, Bartz & Gutenkauf, Minneapolis, Minn., for defendant.

## MEMORANDUM & ORDER

DEVITT, Senior District Judge.

In this declaratory judgment action, the principal issue is the validity and possible infringement of defendant's patents on surgically implantable heart pacemakers (pacers). Plaintiff and defendant are competitors in the manufacture and sale of pacers. Defendant holds patents filed in 1973 and 1975 that it claims are infringed by plaintiff's Microlith and Microthin pacers, which came on the market in 1977 and 1980.

Plaintiff denies infringement and seeks a declaration that defendant's patents are invalid because the concept claimed in them was not new and would have been obvious to one of ordinary skill in the art at the time and hence were not patentable under the law. Defendant counterclaims alleging patent and trademark infringement and unfair competitive practices by plaintiff. This court holds that defendant's patents are invalid for obviousness and are not infringed and that defendant's claims of trademark infringement and unfair competition are without merit.

Heart pacemakers are devices that are implanted in the human body to stimulate and regulate the beat of the heart. In general, there are two kinds of pacers: bipolar and unipolar. A bipolar pacer has two leads; one lead functions as a cathode, which sends electrical impulses to the heart. The other lead functions as an anode, which carries the electrical impulses back to the pacer, thereby completing the electrical circuit. A unipolar pacer has only one lead, which functions as a cathode. Unipolar pacers have two basic types of casings, metal and epoxy. Epoxy-encased pacers have a metal plate on one side of the pacer which functions as the anode. With metal-encased pacers the casing itself acts as the anode. Electrical impulses are sent through the cathode lead to the heart, and return through body fluids to the anode plate or casing.

This case involves three patents—two utility patents and one design patent. Patent No. 3,866,616 ('616 patent) was filed on July 12, 1973. Essentially, this patent discloses a metal-encased unipolar pacer that is coated with an insulative material except for a small area on one side of the pacer, which functions as the anode.

Patent No. 3,987,799 ('799 patent) was filed on February 14, 1975. On January 13, 1977, Reissue Patent No. 30,028 (Reissue patent) was filed. This patent is a reissue of the '799 patent with some additional claims not in issue here. The Reissue ('799) patent essentially describes a pacer with a generally oval shape.

Patent No. 241,980 (Design patent) was filed on February 14, 1975. This patent discloses a shape essentially identical to the one described in the Reissue ('799) patent. Similarly, the trademark and unfair competition claims involve a shape essentially identical to the configuration disclosed in the Reissue ('799) and Design patents.

■ A patent is presumed to be valid. 35 *U.S.C.* § 282. A patent cannot be invalidated unless invalidity is proved by substantial evidence. *Contico International, Inc. v. Rubbermaid Commercial Products, Inc.*, 665 F.2d 820, 823 (8th Cir. 1981). An invention must meet three requirements to be patentable: it must have utility, be novel, and be nonobvious. *Graham v. John Deere Co.*, 383 U.S. 1, 3, 86 S.Ct. 684, 686, 15 L.Ed.2d 545 (1966); 35 *U.S.C.* §§ 101–103.

Section 103 of 35 *U.S.C.* provides in part:

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

■ The test of obviousness does not require disclosure of the claimed invention in a single reference. Rather, obviousness is determined by what the prior art as a whole would suggest to those with ordinary skill in the art. *See, e.g., Lerner v. Child Guidance Prods., Inc.*, 547 F.2d 29, 30 (2d Cir. 1976); *In re Rosselet*, 347 F.2d 847, 851 (C.C.P.A.1965); *Michigan Magnetics, Inc. v. Nortronics Co.*, 245 F.Supp. 401, 403 (D.Minn.1965).

*The '616 Patent*

Defendant asserts that plaintiff's pacers infringe claims 1 and 4 of defendant's '616 patent. These claims provide:

1. A heart pacer for a host including a primary source of heat energy, a converter connected to said source for converting said energy into electrical energy, means, connected to said converter, for deriving electrical pulses from said electrical ener-

gy, output-conductor means including a catheter, connected to said deriving means and to be connected to the heart of said host, for impressing said pulses on said heart, and a container for said source, converter and deriving means, the said container being composed of electrically conducting material and being electrically connected to said deriving means to serve as ground therefore, the outer region of said container being coated with electrically insulating material except over a relatively small limited area thereof on one side only, the conducting material of said limited area to be connected electrically to non-muscular body parts of said host connecting said ground to the body of said host.

. . . .

4. The heart pacer of claim 1 wherein the deriving means includes electrical circuit-component means for converting the electrical energy from the converter into pulses, and the output circuit-conductor means includes output assembly means, said output-assembly means including a feed-through assembly means, said output assembly being connected through the feed-through assembly means to the deriving means within the container and extending out of the container and being connected outside of the container to the catheter.

Defendant's claims can be broken down into five essential elements: 1) a unipolar pacer; 2) with a hermetically-sealed metal container; 3) which is coated with an electrically insulating material; 4) except for a relatively small area on one side (which serves as the anode); 5) which is faced away from muscle tissue.

Unipolar pacers as well as hermetically-sealed metal pacer containers were in use long before defendant's patent. It was well known that the surface of a metal-encased pacer is electrically active and that electrical current can cause muscle twitching. It was also well known that the electrically active anode of a unipolar pacer should be faced away from muscle tissue to avoid twitching. Prior art discloses the use of a

relatively small anode on one side of a unipolar pacer. In addition, prior art discloses the use of insulative coatings.[1] It would have been obvious to a person with ordinary skill in the art, making a unipolar pacer with a metal casing, at the time defendant's invention was made, to coat the pacer with an electrically insulative material and to leave a small opening in the coating on one side of the pacer so that the exposed metal would function as an anode and to face this "anode window" away from muscle tissue.

■ Defendant claims that its pacer is unique because it was the first to coat a metal pacer case with an electrically insulative material and to leave a small hole in the coating to create an "anode window." Even if this is true, this does not automatically entitle defendant to a patent. *National Connector Corp. v. Malco Mfg. Co.*, 392 F.2d 766, 771 (8th Cir.), *cert. denied*, 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968). Defendant's claims merely reflect extended applications of known and obvious principles from prior art. *Id.* Therefore, defendant's patent is invalid for obviousness.

Although the determination that this patent is invalid for obviousness is dispositive, *General Mills, Inc. v. Pillsbury Co.*, 378 F.2d 666, 671 (8th Cir. 1967), a brief discussion of the infringement issue will be provided.

■ To establish infringement all elements of a claim must be present in the accused device. *See e.g., Parmelee Pharmaceutical Co. v. Zink*, 285 F.2d 465, 469 (8th Cir. 1961); *Robertson v. Holt Motor Co.*, 28 F.Supp. 452, 453 (D.Minn.1939). Claim one describes a pacer with a heat energy source and a heat to electrical energy converter. The accused pacers do not have such features. Therefore, plaintiff's pacers fall outside defendant's patent claim unless defendant can invoke the doctrine of equivalents. *Parmelee*, 285 F.2d at 469–72.

1. For example, American Optical's Cardio-Care II pacer and Mulier Patent No. 3,718,142 disclose the use of insulative coatings. Medtronic's 5843 pacer shows the use of a small anode plate on only one side of the pacer. Dr.

When a patent is a pioneer, a wide range of equivalents is allowed; however, when "the patent is narrow, or the art is crowded," only a narrow range of equivalents is allowed. *Id.* at 472. In fact the range of equivalents may "be so narrow as to be virtually nonexistent." *Id.*

■ Defendant's patent is not a pioneer; it is but one of numerous pacer patents. Therefore, defendant's claims must be given a narrow range of equivalents. Based on the facts of this case, this court finds that a heat energy source with a heat to electrical energy converter is not the equivalent of a lithium battery power source and therefore plaintiff's pacers do not infringe claim 1 of defendant's patent.

■ A dependent claim can be infringed only if the independent claim is infringed. *See Weatherhead v. Coupe*, 147 U.S. 322, 13 S.Ct. 312, 37 L.Ed. 188 (1893); *Autogiro Co. v. United States*, 384 F.2d 391, 408 (Ct.Cl.1967). Claim 4 is dependent on claim 1. Because claim 1 is not infringed claim 4 is not infringed.

### The Reissue ('799) Patent

Defendant asserts that plaintiff's pacers infringe claims 1 to 5 of defendant's Reissue ('799) Patent. These claims provide:

1. A heart pacer including a container having therein power-supply means and means for deriving pulsations to be supplied to the heart from said power-supply means, said container to be implanted a short distance below the clavicle of the human body, said container having the form generally of an ovaloid its contour as viewed from its ends, its top and bottom and its sides, being of generally oval 0 configuration whereby said pacer adapts itself positionally and cosmetically and with a minimum of discomfort to the region of the human body where it is implanted.

Smyth's 1969 article on cardiac pacemaking reveals that it was well known to face the anode plate on unipolar pacers away from muscle tissue to avoid twitching.

2. The heart pacer of claim 1 wherein the contour of the container as viewed in the directions of its ends, of its top and bottom and of its sides is of generally elliptical configuration.

3. The heart pacer of claim 1 to be implanted between the pectoralis major muscle and the epidermis of the host, the dimensions in connection with the ovaloid contour of the container of the pacer being such that said container seats neatly in the pectoralis major muscle and in the epidermis without producing an unsightly bulge of the epidermis.

4. The heart pacer of claim 1 having a container which has substantially no sharp concerns in the region where it is sealed in the body.

5. The heart pacer of claim 1 having a terminal for connecting a catheter, said terminal extending generally tangentially from a surface of the container.

The crux of these claims concerns the shape of defendant's pacer.[2] A generally oval configuration was chosen because it was thought this was a more biocompatible design in that the problems of skin necrosis, migration, and unsightly bulge would be minimized.

The problems of skin necrosis, migration, and unsightly bulge were well known. Concerns with biocompatibility were not new. It was known that a pacer with bowed-out sides and well-rounded edges was the most biocompatible because the corners and edges that could cause skin necrosis were minimized. In addition, it was known that such a shape was the most cosmetic because the pacer would merge more readily with surrounding tissue. Prior art discloses many examples of pacers that embody these principles.[3]

Prior to the availability of a dramatically smaller lithium battery in 1974–1975, the two primary concerns of the industry were to make a smaller pacer with a longer battery life. The relatively large batteries that were needed prior to the discovery of the lithium battery had a substantial effect on the shape of the pacers that were manufactured. Most pacers at that time had flat sides and well-rounded edges, although there were pacers that had bowed-out sides.

Prior to defendant's patent there had been significant advances in pacer manufacturing techniques, microcircuitry, and batteries. The shape of defendant's pacer was not a creative innovation but rather was a natural and logical modification, based on known principles, that was heretofore impractical because of technological stumbling blocks.

■ Merely because defendant may have been the first to manufacture a pacer with a generally oval configuration does not necessarily entitle defendant to a patent. *National Connector Corp. v. Malco Mfg. Co.*, 392 F.2d 766, 771 (8th Cir.), *cert. denied*, 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968). Defendant's claims merely are an extended application of obvious attributes from prior art. *Id.* Therefore, the patent is invalid for obviousness.

Even though the finding of obviousness is dispositive, *General Mills*, 378 F.2d at 671, the issue of infringement will be discussed briefly.

In support of its claim for infringement, defendant has argued that its patent, which describes a pacer that is "generally oval," is broad enough to include pacers with flat surfaces. However, prior art contains numerous examples of pacers with generally oval configurations and flat surfaces. In response to the charge of obviousness, defendant claims its pacer is unique because its pacer is generally oval from all views and does not have any flat surfaces.

■ The Supreme Court in *White v. Dunbar*, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303 (1886) stated:

---

2. Claim 5 describes a catheter terminal that extends tangentially from the pacer. Medtronic's Cardio-Care II and 5862 pacers are just two examples of prior art that reveal this precise feature. Therefore, this claim is invalid for obviousness.

3. For example, see Medtronic's Cardio-Care II, 5862, and 5843 pacers and the Electrodyne TR–14 pacer.

Some persons seem to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.

*Id.* at 51–52, 7 S.Ct. at 74, 30 L.Ed. at 305. Defendants have attempted to treat the Reissue ('799) patent as if it were a nose of wax. Patent claims cannot be interpreted narrowly to avoid anticipation or obviousness and then construed broadly to establish infringement. *See id.; Dominion Magnesium Ltd. v. United States,* 320 F.2d 388, 395 (Ct.Cl. 1963).

 This court finds that defendant's patent is limited to pacers without any flat surfaces. The evidence establishes that plaintiff's pacers have large flat surfaces. Therefore, this court holds that plaintiff's pacers do not infringe defendant's patent. Furthermore, since claims 2 to 5 are dependent on claim 1, and since claim 1 is not infringed, claims 2 to 5 are not infringed. *See Weatherhead,* 147 U.S. 322, 13 S.Ct. 312, 37 L.Ed. 188; *Autogiro,* 384 F.2d at 408.

*The Design Patent*

 The configuration in the design patent is essentially identical to the configuration in the Reissue ('799) patent. For the reasons stated above this court holds that the design patent is invalid for obviousness. Furthermore, a design patent is invalid if the design is dictated primarily or solely by functional considerations. *See Bergstrom v. Sears, Roebuck & Co.,* 496 F.Supp. 476, 489 (D.Minn.1980). This court finds that the shape disclosed in defendant's design patent is primarily functional and therefore the patent is invalid.

 Even if the patent was not invalid, it is clear that the patent is not infringed. The test for design patent infringement is whether an ordinary purchaser would be induced to purchase a product supposing it to be another. *Sears, Roebuck & Co. v. Talge,* 140 F.2d 395, 395–96 (8th Cir. 1944). Pacers are expensive and generally are sold to physicians who specialize in pacer implants. Plaintiff's pacers, packages, and literature are clearly marked with plaintiff's corporate name. Plaintiff's pacers are sufficiently different from defendant's pacer so that the ordinary consumer would not be misled. Therefore, there is no infringement.

*Trademark Infringement and Unfair Competition*

 The test for establishing a statutory or common-law claim for trademark infringement or unfair competition is whether there is a likelihood of confusion or deception in the minds of ordinary purchasers. *See Sweetarts v. Sunline Inc.,* 380 F.2d 923, 926–27 (8th Cir. 1967); *Neely v. Boland Manufacturing Co.,* 274 F.2d 195, 203 (8th Cir. 1960); *J. C. Penney Co. v. Artic Enterprises, Inc.,* 375 F.Supp. 913, 914–15 (D.Minn.1974); *LaMaur, Inc. v. Revlon, Inc.,* 245 F.Supp. 839, 842 (D.Minn.1965).

 It is unlikely that the sophisticated customers who purchase these devices would be deceived or confused. Therefore, even assuming defendant has established a trademark, there has been no infringement or unfair competitive practice.

*Attorneys' Fees*

 Plaintiffs have requested attorneys' fees under 35 *U.S.C.* § 285. Attorneys' fees may be awarded under this section only in extraordinary cases in which there has been a showing of unfairness, bad faith, or unconscionable conduct. *See, e.g.,*

*Siebring v. Hansen,* 346 F.2d 474, 480 (8th Cir.); *cert. denied,* 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); *Uniflow Manufacturing Co. v. King-Seeley Thermos Co.,* 428 F.2d 335, 341 (6th Cir.) *cert. denied,* 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); 35 *U.S.C.* § 285. This court does not find this to be one of those exceptional cases. Therefore, the request for attorneys' fees is denied.

In summary this court holds that defendant's patents are invalid for obviousness and not infringed, and that defendant's trademark and unfair competition claims are without merit. Therefore, it is ordered that judgment be entered in favor of plaintiff.