**L & A PRODUCTS, INC., and James F. Lindsay, Appellants,**

**v.**

**BRITT TECH CORPORATION, Oren B. Harmes, John H. Threlkeld and Donald A. Deal, Appellees.**

**No. 18275.**

United States Court of Appeals
Eighth Circuit.

Aug. 29, 1966.

Rehearing Denied Sept. 27, 1966.

John D. Gould, of Merchant, Merchant & Gould, Minneapolis, Minn., for appellants. Richard J. Leonard, St. Paul, Minn., was with him on the brief.

Kenneth D. Siegfried, of Schroeder, Siegfried & Ryan, Minneapolis, Minn., for appellees. Everett J. Schroeder, Min-

neapolis, Minn., was with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

On October 16, 1962, United States Patent No. 3,058,668 for an invention entitled "cleaning apparatus" was issued to plaintiffs Oren B. Harmes, John H. Threlkeld and Donald A. Deal as joint inventors. These individual plaintiffs have granted the corporate plaintiff, Britt Tech Corporation, an exclusive license to manufacture, use, and sell devices embodying the subject matter of the patent.

The four plaintiffs sued L & A Products, Inc., James F. Lindsay, its president, and Dennis Warta, a dealer, for damages and injunctive relief based upon alleged patent infringement, unfair competition, false marking, and antitrust violations. The defendants denied these allegations, asserted the invalidity of the patent, and counterclaimed for alleged unfair acts on the part of the plaintiffs and their agents. A preliminary procedural aspect of the litigation is reported as Britt Tech Corp. v. L & A Products, Inc., 223 F.Supp. 126 (D. Minn.1963).

Prior to trial the district court dismissed the antitrust count, the counterclaim, and the entire suit as to Warta. After trial the court, in an unreported memorandum, held that the patent was valid and that Lindsay and the corporate defendant had infringed it. It concluded, however, that the plaintiffs had not established unfair competition or false marking and it dismissed those counts with prejudice. Injunctive relief and the determination of damages were withheld pending appeal.

The defendants appeal from the trial court's determinations of validity and infringement and from its refusal to dismiss as to Lindsay who, they claim, acted only as an officer of the corporate defendant. The plaintiffs have not appealed from any aspect of the judgment adverse to them.

We reverse on the issue of patentability and patentability's requirement of nonobviousness. This makes it unnecessary for us to consider the secondary issues of infringement and Lindsay's status.

The patent has 19 claims. It is stipulated, however, that the plaintiffs rely only on claims 4, 5, 6 and 8. The patented device is used primarily for cleaning automobiles by the selective application of soap, rinse water, solvent, and compressed air through a system of conduits ending in a nozzle or spray gun. The operator controls the application through the use of switch buttons on the gun. Only the rinse and soap bases are involved here.

The trial court found that the "heart" of the plaintiffs' invention is a solenoid "restrictor valve" in the water line. No one disputes the correctness of this finding. The valve is opened or closed by the operator by use of one of the buttons. It is opened for the rinse phase. There is, however, a narrow bypass drilled through the valve which, when the valve is closed, permits the passage of a relatively small quantity of water. This flow is then inadequate to satisfy the demands of the pump which draws water to the nozzle; as a consequence, the pump, being "starved", pulls soap concentrate from a tank through a connecting conduit. The soap mixes with the water which passes through the small opening in the restrictor valve before emerging from the nozzle. The advantage of the valve thus appears to lie in the resulting ability of the device to utilize a single source of water to rinse and to dilute the soap concentrate to the desired extent before it is projected upon the article being cleaned.

The district court found that the use of the restrictor valve in the water line in combination with other elements of a cleaning apparatus of this kind, as disclosed by the teachings of the patent, was "novel and patentable". It said that, while there is some prior art which, "in the light of" the teachings of the plaintiffs' patent, "possibly could have

been utilized to produce" the effect of starving a pump by restricting the flow of water through a valve, "there is no prior art which teaches the novelty" of the plaintiffs' patent, that is, "having a restrictor valve in the water line" by which "the flow of another liquid will be induced from a secondary source".

The district court filed its memorandum and entered judgment in this case prior to the Supreme Court's February 1966 decisions in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, and United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572. Those opinions, however, are pertinent here.

The *Graham* decision came on certiorari to this court in two separate cases concerning different patents. In John Deere Co. of Kansas City v. Graham, 333 F.2d 529 (8 Cir. 1964), one of our panels had held a shank plow spring clamp patent to be invalid for lack of invention. In Calmar, Inc. v. Cook Chem. Co., 336 F.2d 110 (8 Cir.1964), another panel had upheld a patent for a finger operated sprayer with a hold-down lid. The Supreme Court concluded that neither patent was valid, reversed our judgment in *Calmar* and affirmed our judgment in *Graham*, although noting, p. 4 of 383 U.S., 86 S.Ct. 684, 687, that, by our "new result" approach in that case, we had not applied the correct test.

In *Graham* the Supreme Court once again, "After a lapse of 15 years", reviewed patentability standards. It recognized and confirmed the two longstanding requirements of novelty and utility and, in addition, the "third statutory dimension" of nonobviousness formally supplied by the Patent Act of 1952, 66 Stat. 798, 35 U.S.C. § 103, but "long ago" established by judicial precedents centering in Hotchkiss v. M. Greenwood & Co., 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851). We regard as particularly pertinent the Court's following observations and emphases:

"The section [§ 103] is cast in relatively unambiguous terms. Patentability is to depend, in addition to novelty and utility, upon the 'non-obvious' nature of the 'subject matter sought to be patented' to a person having ordinary skill in the pertinent art.

"* * * The emphasis on nonobviousness is one of inquiry, not quality * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. * * *

"This is not to say, however, that there will not be difficulties in applying the nonobviousness test. * * * The difficulties * * * should be amenable to a case-by-case development. * * *

"Although we conclude here that the inquiry which the Patent Office and the courts must make as to patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in the general strictness with which the overall test is to be applied. * * He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office." Pp. 14, 17, 18, and 19 of 383 U.S., pp. 692–695 of 86 S.Ct.

The companion *Adams* case, although upholding the validity of the patent there under attack, also emphasized novelty, utility, and nonobviousness as "separate tests of patentability and all must be satisfied in a valid patent". P. 48 of 383 U.S., p. 712 of 86 S.Ct.

■ It is apparent, therefore, that these three tests constitute our guidelines here; that "background skill of the calling", that is, obviousness or nonobviousness "to a person having ordinary skill in the pertinent art" is the governing gauge on the third factor; and that any difficulty in applying the nonobviousness test is to be resolved by case-by-case development.

Both sides here recognize the pertinence of *Graham* and *Adams* and, depending upon the point of view, advance those cases as supportive of their respective positions. It would be oversimplification to conceive of *Graham* and *Adams* as two poles, one of which would necessarily govern each patent case when it comes under a court's scrutiny. We regard them, so far as the nonobviousness test is concerned, as the Supreme Court's own contribution to its indicated case-by-case development. They are significant, however, and, as in other post-*Graham* decisions of this court, some of them effecting reversals of judgments of validity, Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25 (8 Cir. 1966); American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977 (8 Cir. 1966); Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895 (8 Cir. 1966); Piel Mfg. Co. v. George A. Rolfes Co., 363 F.2d 57 (8 Cir. 1966); Automated Building Components, Inc. v. Hydro-Air Engineering, Inc., 362 F.2d 989 (8 Cir. 1966), we conclude that *Graham* necessitates a holding of invalidity of the patent here, and that the baffling problems which confronted the inventor in *Adams* prevent that case from having any factual correspondence with or control over the present controversy.

■ We assume the existence of novelty and utility for the Harmes et al patent under attack here. We may assume, also, that its challenged claims embrace only elements which were well known in the prior art; this, however, as *Adams* teaches, pp. 51–52 of 383 U.S., 86 S.Ct. 708, does not alone defeat patentability. These assumptions take us at once to the third condition of nonobviousness.

■■ We recognize, of course, that the statute provides a presumption of a patent's validity and places the burden of establishing invalidity upon the party who asserts it. 35 U.S.C. § 282. But, as in *Graham*, that presumption is rebuttable and may be overcome by substantial evidence negating any one of the three essentials for patentability. Although patent validity is an issue of law,

the nonobviousness requirement is one which lends itself to several basic factual inquiries, namely, the determination of the scope and content of the prior art, the ascertainment of the difference between the prior art and the claims at issue, and the resolution of the level of ordinary skill in the pertinent art. P. 17 of 383 U.S., 86 S.Ct. 684. We necessarily follow that path.

The Ackerman patent, which is No. 1,658,473 issued February 7, 1928, for "car washing apparatus", and which was not before the Patent Office when Harmes et al was processed, utilizes a diluted soap solution rather than a concentrate. Water and the solution are independently drawn and supplied through the operation of a 3-way valve. There is, thus, no occasion in Ackerman for a system which permits the pump to draw varying amounts of water. The practical difference between Ackerman and Harmes et al is that Ackerman utilizes its previously diluted soap solution, whereas Harmes et al utilizes soap concentrate and water from separate sources and mixes them with the very operation of the pump.

The Wyatt et al patent, which is No. 2,861,838 issued November 25, 1958, for "fluid spray cleaning machines", and which was before the Patent Office, utilizes soap concentrate and mixes it with water from an independent source to provide a solution at the intake of the pump. Wyatt et al, however, has no valve which permits the operator to control the water flow other than by some device extrinsic to the machine.

Ackerman, Wyatt et al, and the patent in suit, all possess the same function and all are aimed at the same need. Each provides, through a pump and nozzle, a soap solution upon a surface to be cleaned. Ackerman and Harmes et al in addition may, by valve control, regulate the supply of water. The difference between these two is in the nature of the valve itself.

We need go no further into the prior art to be convinced that the mechanical patent in suit does not fulfill the legal re-

quirement of nonobviousness at the level of ordinary skill in the field. There is no magic in the mixing process as such and we fail to find any in the principle of pump starvation and the bypass aperture in Harmes et al. The development of soap concentrates and their wide utilization in the 30 plus years since Ackerman was issued, the presence of both Ackerman ,and Wyatt et al in the confined washing and cleaning art with which the present patent is concerned, and the long-existent knowledge of the principle of hydraulic suction set the stage for the development of such advance as Harmes et al embraces by any "person having ordinary skill in the art" when the particular result was desired. The condition of nonobviousness is not fulfilled.

It is no answer to argue, as the plaintiffs do, that none of the expert witnesses "were able to point to any machine or reference which embodied the invention as claimed in the four claims in suit." A like argument as to the plow patent was made in Graham and yet the Court said, p. 24 of 383 U.S., 86 S.Ct. p. 697.

> "We assume that the prior art does not disclose such an arrangement as petitioners claim in patent '798. Still we do not believe that the argument on which petitioners' contention is bottomed supports the validity of the patent."

Being first did not save the patents in our own recent cases of Skee-Trainer, Inc. v. Garelick Mfg. Co., supra, and Piel Mfg. Co. v. George R. Rolfes Co., supra.

We are aware of what has been described as the judiciary's ill-fittedness "to discharge the technological duties cast upon it by patent legislation", of the ever present danger of our "slipping into use of hindsight", and of the "temptation to read into the prior art the teachings of the invention in issue", p. 36 of 383 U.S., p. 703 of 86 S.Ct. but, cautioning ourselves accordingly, we are fully satisfied that Judge Mehaffy's observation in Kell-Dot Industries, Inc. v. Graves, supra, p. 30 of 361 F.2d, is pertinent for the Harmes et al patent:

"We are convinced here that anyone skilled in the art with patent office references before him could have, without the exercise of any inventive faculty, combined old elements known to the art and made plaintiff's machine. Assuming that the patent in suit was an improvement over the prior art, it still does not rise to the level of patentability."

On the intervening authority of *Graham's* guidelines, we reverse the judgment of the district court.