**IMPERIAL STONE CUTTERS, INC., a Corporation, and Floyd W. Trindle, an Individual, Appellants,**

v.

**Herman SCHWARTZ, Appellee.**

No. 18436.

United States Court of Appeals Eighth Circuit.

Dec. 20, 1966.

**426**

Jerry J. Dunlap, of Dunlap & Laney, Oklahoma City, Okl., for appellants. P. H. Hardin, of Hardin, Barton, Hardin & Jesson, Fort Smith, Ark., was with him on the brief.

Bruce H. Shaw, of Shaw, Jones & Shaw, Fort Smith, Ark., for appellee. Orrin M. Haugen, of Adams, Cwayna & Haugen, Minneapolis, Minn., was with him on the brief.

Before VAN OOSTERHOUT and GIBSON, Circuit Judges, and REGISTER, District Judge.

GIBSON, Circuit Judge.

This is an appeal by plaintiffs in a patent infringement suit. The United States District Court for the Western District of Arkansas found the patent in suit invalid because it was anticipated by the prior art and awarded judgment to the defendant. We affirm.

Plaintiff Imperial Stone Cutters (formally Southwest Industrial Products, Inc.) is the assignee of the patent in suit, No. 2,762,359 secured by G. B. Entz in 1956 on an application dated November 9, 1954. Plaintiff Floyd W. Trindle is the president of Imperial Stone Cutters.

Defendant, Herman Schwartz, purchased the accused device from Park Tool Company of St. Cloud, Minnesota, and has been operating the machine near Paris, Arkansas, since October 1963. It was stipulated that the Park Tool Company was bearing the expense and controlling the defense of the infringement suit.

Plaintiffs are presently engaged in the manufacture and sale of stone cutting machines that utilize hard metal chisels covered in the Entz patent. The machine is used for cutting or breaking stratified and artificial stone slabs of varying thickness. The claims of the patent considered in this suit relate only to the chisels used in the cutting jaws of the machine. Both upper and lower jaws are composed of a plurality of individual chisels with a head containing a transverse cutting edge. The chisels are independently suspended in pairs allowing intimate contact with the rough and often uneven contour of the stone. The chisels comprising the upper jaw are set in a rigid or stationary position while the lower jaw is moveably operated by hydraulic pressure toward the upper jaw, so as to break or fracture the stone along a vertical plane that lies between the mating chisels of the two jaws. These chisels have gable-like projections from the shafts on the heads of the chisels that extend, when placed in the jaws of the machine, over the gaps between the shafts so as to form a substantially continuous cutting or fracturing edge.

The claims of the patent in suit read as follows:

"10. In a cutting jaw for a stone cutting machine, the combination of a plurality of chisels, each comprising a shank having a transverse cutting edge at one end and a gable-like projection extending from a side of the shank provided with a cutting edge in continuation with said first mentioned cutting edge, and means moveably supporting said chisels in side-by-side relationship; with the cutting edges of the shanks and of the projections normally in the same line, but for movement axially independently one with respect to another whereby they may be independently moved to dispose their said cutting edges into intimate contact with the uneven surface of a stone, said means including spacers between said sides of adjacent chisels from which said projections extend.

"11. The cutting jaw as specified in Claim 10 in which said chisels are arranged in pairs, the chisels of each pair disposed with the sides of their shanks, opposite to those from which said projections extent, in sliding contact one with another."

The validity of these claims has been previously upheld by this Court in Ezee Stone Cutter Manufacturing Company v. Southwest Industrial Products, Inc., 262 F.2d 183 (8 Cir. 1958). The prior art relied upon to defeat plaintiffs' patent in the *Ezee* case was U. S. Patent of Jones No. 2,723,657. The prior Jones patent disclosed moveable cutting chisels, but these chisels had considerable space between them, and did not have gable-like projections on their cutting heads. These spaces caused uneven cutting and fracturing of the stone. By extending the head of the chisel in a gable-like manner so that it would come into sliding contact with the cutting edge of the neighboring chisel, plaintiffs' patent provided a "simple" method by which these spaces could be eliminated. On the basis of this novel difference, the District Court's finding of invention in the *Ezee* case was approved by us, and the claims therein being litigated were considered valid over the prior Jones patent.

The accused device is very similar to the patent in suit, so similar that if plaintiffs' patent is valid it appears to us that the defendant would be guilty of infringement.

■ Defendant's sole defense has been reliance upon the invalidity of plaintiffs' patent. Defendant is not relying upon the Jones patent litigated in the prior suit, but rather upon a non-patented prior art in public use for more than a year prior to plaintiffs' patent application. The prior art relied upon is a stone cutting machine manufactured and sold by George A. Vesper of Glendale, California. Since the Vesper machines were in public use more than a year prior to the filing date of plaintiffs' patent and if they are, in fact, an anticipation of plaintiffs' patent, the patent is invalid. 35 U.S.C. § 102(b).[1] O'Brien v. Westinghouse Electric Corporation, 293 F.2d 1 (3 Cir. 1961). Therefore, the sole issue for determination is whether the Vesper machines are a disclosure that would destroy the validity of plaintiffs' patent.

■ It is elementary that a patent's grant of monopoly is measured solely by the claims allowed in the patent. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672 (1949); L. S. Donaldson Company v. La Maur, Inc., 299 F.2d 412 (8 Cir. 1962), cert. denied 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 57. Close examination of the claims in plaintiffs' patent discloses that they relate solely to the placing and operation of the chisels in the cutting jaw; there is no ambiguity in the claims, which could justify resort to the specifications. An examination of the Vesper machine discloses exactly the same technique being employed in the construction of its chisel and its placement in the cutting jaw. Any differences in the operation of the Vesper machine or relating to the placing of the teeth either in the lower or upper jaw do not come within the rather narrow claims concerned in this suit, and, therefore, are not material to a decision in this case. Also, we think it is immaterial whether the upper or lower jaw is utilized as the moveable element when the hydraulic pressure is applied to the stone.

The only difference between the cutting mechanisms of the Vesper prior art and those described in the patent claims appears to be the presence of a small bevel or chamfer on the lateral edges of each chisel in the Vesper machine. As constructed by plaintiff, the edges of each chisel come to a sharp three corner point at the lateral ends of the chisel.

1. § 102 in part reads:
"A person shall be entitled to a patent unless—
  *    *    *    *    *

"(b) the invention was * * * in public use or on sale in this country, more than one year prior to the date of the application for patent * * *."

This sharp edge is removed in the Vesper machines by beveling off the point by %2 of an inch. The reason Vesper gave for beveling off the sharp points of each chisel was that the pressure on these points caused the chisel to break easily. By "touching them on the grinder just enough to break the point" chisel breakage was reduced. This beveling or chamfering of the lateral cutting edge would cause gaps of about %2 of an inch between each chisel head in what otherwise would be a continuous cutting edge.

Plaintiffs argue that the primary invention of their patent is a continuous cutting edge, and Vesper's removal of the sharp points on the individual chisels created gaps between the chisels. Thus, it is plaintiffs' contention that the cutting edge cn the Vesper machine is not continuous within the meaning of plaintiffs' patent claims, and therefore, there is no anticipation.

The trial court, after hearing all of the evidence, did not accept plaintiffs' argument and, in an opinion reported at 252 F.Supp. 60, 64 (W.D.Ark.1966), concluded:

"An examination of the exhibits * * establishes that the mechanical structure of the Vesper stone cutter is substantially the same as that of the Entz machine. The elements of the structures, i. e., continuous cutting surface, chisels arranged in pairs, spacers for alignment and to separate the pairs, and the ability to align the chisels in intimate contact with the cutting surface are substantially the same as claimed in the Entz machine and in the Vesper machine. Substantially the same, if not identical, functions are performed by the structural parts. A substantial, if not identical result is accomplished by the operation of the two devices."

This finding by the trial court appears to be essentially a finding of fact to which the Court applied the proper applicable legal principles. While there is lack of unanimity in the reported decisions on whether validity of a patent is essentially a question of law or of fact, the later decisions treat the question as one of law. Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); L & A Products, Inc. v. Britt Tech Corporation, 365 F.2d 83, 86 (8 Cir. 1966); See American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977, 988 (8 Cir. 1966); Comment, 34 U.M.K.C. Law Rev. 393, 403–406 (1966). The adverse resolvement of the issue of validity by the trial court is entitled to affirmance whether the decision is based on a factual determination or upon invalidity as a matter of law. The trial court's factual findings are supported by the record, and its legal conclusions are proper.

The continuous cutting edge described in plaintiffs' patent claim 10 related to the continuation of the cutting edge by the use of a gabled projection eliminating the substantial spaces between chisels. This use of gables to eliminate the substantial spaces between chisels is also found in the earlier Vesper machines. The only difference between the patent claims and the Vesper machines is the small bevel placed on the edges of the Vesper chisels.

The mere elimination of the small bevel cannot be considered the basis upon which this patent was originally granted and upheld, nor should it be considered the basis upon which its validity can now be affirmed. The elimination of the bevel is such a simple, minute and obvious step that it cannot be considered a "creation of the inventive faculty." Should one desire a chisel with sharp points on the lateral ends, the refraining from "touching them to a grinder" would be manifestly obvious to anyone skilled in the art. Plaintiffs are not entitled to a patent on this obvious step. 35 U.S.C. § 103; Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977 (8 Cir. 1966). The disclosure in the prior art of Vesper,

which apparently was not before the Patent Office, is substantially identical to the patent in suit. The two machines perform substantially the same function in substantially the same way, and had Vesper constructed his device after the grant of the Entz patent, Vesper would no doubt be guilty of infringement, which then calls for the application of the rule that which infringes, if later, would anticipate if earlier. American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801 (1931). And, of course, plaintiffs' presumption of validity is weakened if there is applicable prior art not considered by the Patent Office. L. S. Donaldson Company v. La Maur, Inc., supra, 299 F.2d at 420. For these reasons we believe the Vesper disclosure to be an anticipation of plaintiffs' patent destroying its validity. See I Deller's Walker on Patents, § 57 (2nd Ed. 1964).

■ In addition the elimination of this bevel probably represents no useful advance over the Vesper machine. The evidence, taken most favorable to the trial court's findings, indicates that the Vesper machine had a very clean cut, that the bevels are a positive advantage in reducing breakage of chisels, and that the sharp edges on plaintiffs' chisels gradually become beveled off with use. Thus the mere elimination of the bevel cannot be considered an advance in the art. It does not represent a change that contains utility, and without utility even a non-obvious change is not entitled to patent protection. Lorenz v. General Steel Products Company, Inc., 337 F.2d 726 (5 Cir. 1964); U.S.Const., Art. I, Sec. 8, Clause 8; 35 U.S.C. § 101; I Deller's Walker on Patents, § 85 (2nd Ed. 1964).

■ In affirming the trial court, we are not unmindful of our prior opinion on the claims now before us. That decision measured the claims against a prior patent. On the basis of that evidence the decision is correct. Plaintiffs urge application of the doctrine of *stare decisis* on the issue of validity, citing Cold Metal Process Company v. E. W. Bliss Company, 285 F.2d 231 (6 Cir. 1960). We agree with the principle therein applied that precedents that cannot be distinguished should be followed. However, the case at bar presents new and different evidence of high materiality and relevancy on the prior art that was not presented in the prior *Ezee* case. On the evidence now presented we believe the invalidity of the claims in plaintiffs' patent is clear. The "gaps" referred to in the previous case were those gaps caused be the spacing of the individual chisels without gables. This gap was eliminated by the Vesper prior art as well as by plaintiffs' patent claims. The small gaps caused by the beveling of the sharp point on the lateral cutting edge in the Vesper disclosure are not of the kind or nature considered in the prior litigation. Therefore, we are not "reversing" our prior opinion.[2] These small bevels do not interrupt the "continuous" nature of the cutting edge described in plaintiffs' patent.

■ Since the elimination of these small bevels is an obvious and non-utilitarian step, plaintiffs' claims 10 and 11 are invalid because of anticipation by the Vesper disclosure. An invalid patent cannot be infringed.

Judgment of the District Court is affirmed.

2. The same experienced and able United States District Judge, The Honorable John E. Miller, presided at the trial of both *Ezee* and the case at bar. His factual findings and application of the law in each case, on the evidence presented, were clearly correct.