**UNIVERSITY OF ILLINOIS FOUNDATION, Plaintiff,**

v.

**WINEGARD COMPANY, Defendant.**

**Civ. No. 3–695–D.**

United States District Court
S. D. Iowa,
Davenport Division.

June 23, 1967.

As Amended July 18, 1967.

Basil P. Mann, William A. Marshall, Chicago, Ill., and David J. Shor, Davenport, Iowa, for plaintiff.

Keith J. Kulie, Donald B. Southard, Chicago, Ill., and Edward W. Dailey, Burlington, Iowa, for defendant.

## MEMORANDUM OPINION

STEPHENSON, Chief Judge.

This action was brought by the plaintiff University of Illinois Foundation, the owner by assignment of U. S. Patent 3,210,767, issued to Dwight E. Isbell on October 5, 1965 (hereinafter referred to as the Isbell Patent and attached hereto as Appendix A), against the defendant Winegard Company wherein the plaintiff seeks a finding that said patent has been and is being infringed by the defendant. In its answer the defendant alleges, *inter alia,* invalidity of the patent on the grounds that the invention was disclosed more than one year prior to the date of the application for the patent and that, at the time made, the invention was obvious to one skilled in the art. Jurisdiction is established by virtue of 35 U.S.C. § 281 and 28 U.S.C. § 1338.

■ Inasmuch as the defendant alleges invalidity of the patent as a defense, the Court must determine initially whether or not the Isbell patent is valid. General Mills, Inc. v. Pillsbury Co., 378 F.2d 666 (8th Cir., 1967); American Infra-Red Radiant Co. v. Lambert Indus., Inc., 360 F.2d 977, 983–984 (8th Cir., 1966). Of course, a patent, from the fact of its issuance is presumed to be valid. 35 U.S.C. § 282; Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 7–8, 55 S.Ct. 928, 79 L.Ed. 163 (1934); L & A Products, Inc. v. Britt Tech. Corp., 365 F.2d 83, 86 (8th Cir., 1966); American Infra-Red Radiant Co. v. Lambert Indus., Inc., supra, 360 F.2d at 988–989. However, this presumption of validity is weakened when, as in this case, there are prior art references or alleged disclosures of the patent before the Court that were not considered by the patent office during the prosecution of the application for the patent. Imperial Stone Cutters, Inc. v. Schwartz, 370 F.2d 425, 429 (8th Cir., 1966); American Infra-Red Radiant Co. v. Lambert Indus., Inc., supra, 360 F.2d at 989; Greening Nursery Co. v. J & R Tool & Mfg. Co., 252 F.Supp. 117, 139 (S.D.Iowa, 1966), aff'd, 376 F.2d 738 (8th Cir., 1967).

■ There are three separate conditions precedent to patent validity. They are: Novelty, utility, and nonobviousness. 35 U.S.C. §§ 101–103; Graham v. John Deere Co., 383 U.S. 1, 12, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); United States v. Adams, 383 U.S. 39, 48, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); L & A Products, Inc. v. Britt Tech. Corp., supra, 365 F.2d at 85. In this case the defendant relies on lack of novelty (Title 35 U.S.C. Section 102) and obviousness (Section 103) as barring patentability. It is the opinion of the Court that the issue of obviousness is dispositive of this case. Therefore, that issue will be first considered.

■ While the ultimate question of patent validity is one of law, the determination of the question of obviousness lends itself to several basic factual inquiries. Graham v. John Deere Co., supra, 383 U.S. at 17, 86 S.Ct. 684; L & A Products, Inc. v. Britt Tech. Corp., supra, 365 F.2d at 86. In addition to setting out the scope of the patent in suit, the scope and content of the prior art must be defined so that a determination can be made as to whether the differences between the patent in suit and the pertinent prior art would have been obvious to one ordinarily skilled in the art. If such differences as may exist

would have been obvious to a person ordinarily skilled in the art, the obviousness test of 35 U.S.C. § 103 has not been met and the patent will be invalid. Graham v. John Deere Co., supra, 383 U.S. at 37, 86 S.Ct. 684, General Mills, Inc. v. Pillsbury Co., supra.

### The Patent in Suit

The Isbell Patent is entitled "Frequency Independent Unidirectional Antennas" and relates to antennas designed for the transmission and reception of electromagnetic radio frequency signals. These signals are used for the broadcasting of many types of communications including radio and television signals. The Isbell antenna consists of a plurality of elements called "dipoles"[1] which are arranged in relation to each other and connected to each other in a particular manner. Generally, as stated in the patent specification, "the antennas of the invention are coplanar dipole arrays consisting of a number of dipoles arranged in side-by-side relationship in a plane, the length and the spacing between successive dipoles varying according to a definite mathematical formula, each of the dipoles being fed by a common feeder (transmission line) * * *."[2] According to the patent specification,

The feeder or transmission line consists of two conductors, one of which is connected to the inner end of one-half of each dipole, the other being connected

The lengths of the dipoles and the spacing between dipoles are related by a constant scale factor $\tau$ defined by the following equations:

$$\tau = \frac{L(n+1)}{Ln} = \frac{\Delta S(n+1)}{\Delta Sn}$$

where $\tau$ is a constant having a value less than 1, $Ln$ is the length of any intermediate dipole in the array, $L(n+1)$ is the length of the adjacent smaller dipole, $\Delta Sn$ is the spacing beween the dipole having the length $Ln$ and the adjacent larger dipole, and $\Delta S(n+1)$ is the spacing between the dipole having the length $Ln$ and the adjacent smaller dipole.[3]

———◆———

[1] Generally, in this context, a simple straight dipole antenna element consists of two elongated metallic conductors (wires, rods or tubes) arranged approximately colinearly in such a manner that there is a small gap or terminal between their inner ends, at which point a transmission line is attached. The familiar "rabbit-ear" indoor television antenna is a simple dipole having its arms at an angle rather than in a straight line. When immersed in an electromagnetic field the dipole element will intercept electromagnetic radio waves and produce a voltage across the terminal. This voltage is carried to the receiver by means of the transmission line. The dipole antenna element, like any other electrical conductor, will intercept radio energy from the atmosphere to a limited extent, regardless of the frequency of the energy being transmitted. There is, however, a special condition, known as "resonance", in which the dipole is strongly receptive, which occurs when the dipole is of a particular length in relationship to the wavelength of the radiated energy. This condition occurs primarily when the overall length of the dipole is one-half of the wavelength of the radio wave. Thus, it is apparent that a dipole can be "tuned" for optimum reception of a particular radiowave frequency by adjusting the overall length of the dipole. The relative ability of one antenna to produce a signal (i,e., a radio frequency voltage) at a given location distant from the transmitting station in comparison with another antenna similarly located is a measure of the antenna's "gain," a technical term used in the industry in reference to an antenna's signal-producing capabilities.

[2] Isbell Patent, Col. 1, lines 14–19. See App. A.

[3] Isbell Patent, Col. 1, lines 50–62. See App. A.

to the inner end of the other half of the dipole, and transposed between connections of successive dipoles in such a manner that each conductor is connected alternately to the left and right halves of successive dipoles. (See Appendix A, Fig. 1.)

Antennas designed in accordance with the patent specifications are claimed to have unidirectional radiation patterns and high quality performance which are, over a wide band of frequencies, essentially independent of the frequency of the electromagnetic radio waves being transmitted or received. An antenna with such characteristics is, of course, desirable when the reception of many different frequencies is required as one such antenna may be used in place of many antennas which are each capable of receiving a limited number of frequencies. Since VHF television signals are broadcast over a range of frequencies of 54 megacycles/second to 216 megacycles/second,[4] an antenna capable of receiving high quality signals with uniform performance characteristics in that range of frequencies would be of commercial utility. This is particularly true in respect to the reception of color television signals where the minimum standards of performance are higher than those required for satisfactory black and white television reception.

There are fifteen claims in the Isbell patent. See Appendix A. All of the claims except numbers 6, 7 and 8 are claimed to be infringed by one or more of twenty-two models of defendant's antennas which are designed for the reception of television signals.[5] Specifically, all twenty-two models are alleged to be literal infringements of claims 14 and 15 and also within the inventive concept of claims 1–5 and 9–13. In addition, one of the antennas, the chromatel CT–100, is alleged to be a literal infringement of claims 1, 2, 9, 10, 11, and 12. It should be noted here that while the portions of the antennas which are charged as infringing are designed solely for the reception of VHF television signals, the Isbell antenna is not so limited. It is designed both as a receiving antenna and a transmitting antenna for use in an unlimited range of frequencies. For example, the specification indicates that the antenna has very high performance characteristics over as high a range as 1100 to 1800 mc/sec.[6]

---

4. Channels 2–6 broadcast over radiowave frequencies 54–88 megacycles/second, each channel being assigned a band 6 megacycles wide in which to broadcast. Thus, channel 2 broadcasts over the range 54–59 megacycles/second; channel 3, 60–65 megacycles/second; etc. Channels 7–13 broadcast over frequencies 176–216 megacycles/second, with 89–175 megacycles/second being assigned to non-television broadcasting. While some of the antennas accused of infringing are designed for the reception of VHF and UHF (470–890 megacycles/second) signals, it is only the VHF sections of these antennas that are alleged to be infringements of the Isbell patent.

5. The Winegard antennas that are alleged to be infringements of the Isbell patent are the models with the following numbers:

| | | | |
|---|---|---|---|
| Chromaflex | B–445 | R.C.A. | 10–B–200 |
| " | B–550 | " | 10–B–300 |
| " | B–555 | " | 10–B–400 |
| " | B–660 | " | 10–B–1010 |
| " | B–770 | " | 10–B–1020 |
| " | B–105 | " | 10–B–1030 |
| " | B–335 | " | 10–B–1040 |
| Chromatel | CT–40 | " | 10–B–1050 |
| " | CT–80 | " | 10–B–1120 |
| " | CT–90 | " | 10–B–1130 |
| " | CT–100 | " | 10–B–1140 |

6. Isbell Patent, Col. 2, lines 47–52. See App. A.

### Prior Art

Four prior patents are cited in the patent as having been considered by the patent examiners. One of these patents, five other U. S. patents not referred to by the examiners, an article published on March 31, 1958 and three antennas in use prior to 1959 are among the references relied upon by the defendant as revealing the prior art at the time of the invention. An examination of some of these references will be helpful in defining the state of the prior art on May 3, 1960, the date of the filing of the application for the patent.

The Katzin patent (U. S. Patent No. 2,192,532, the first page of which is attached hereto as Appendix B) cited by the patent office reveals an antenna consisting of an array of dipole elements of different lengths arranged in a side-by-side relationship in a plane. While some of the illustrated embodiments of the Katzin invention show antennas having several elements of one length arranged parallel to several elements of another length, one illustrated embodiment (Figure 3c, Appendix B) shows an array described in claim 7 of the patent as being "a plurality of aerial elements, all of differing length, continuously tapering in length from one end of said antenna to the other * * *."[7] The patent also suggests, in claim 11 thereof, that the spacing between the shorter elements may be less than that between the longer elements.[8] The teaching of the Katzin patent is that if elements, or groups of elements, of differing lengths are combined into one array, each of the elements, or groups of elements, "will respond most efficiently to its corresponding band of frequencies, so that the combination of two or more such groups * * * will give the result of a high response for a wider frequency band."[9]

One of the antennas cited as prior art by the defendant is the Channel Master "K. O." antenna model 1023, produced and marketed by the Channel Master Corporation at Ellenville, N. Y. between September 1954 and December 1958. A schematic diagram of this antenna, Exhibit DX–G–16, is attached hereto as Appendix C. This antenna is an array of *folded* dipoles,[10] each of a different length, arranged in a coplanar side-by-side relationship decreasing in length from one end of the array to the other. The spacing between the dipole elements is irregular, the elements not being equally spaced and the spacing not varying progressively from one end of the array to the other. The feeder or transmission line running between the elements consists of two conductors, one of which is connected to one end of the folded dipole at the terminal point, the other connected to the other end of the dipole at the terminal point, and transposed between dipoles such that each conductor is alternately connected to the left and right ends of successive dipoles. Trans-

---

7. U.S. Patent No. 2,192,532, p. 2, Col. 2, lines 54–58.

8. U.S. Patent No. 2,192,532, p. 3, Col. 2, lines 5–14; See also Fig. 3d, App. B.

9. U.S. Patent No. 2,192,532, p. 2, Col. 1, lines 16–21.

10. Folded dipoles are simple dipoles, see n. 1, supra, which have been altered by adding another conductor in such a manner that it is approximately parallel to the simple dipole and attached to the outer ends of each half of the simple dipole. The resulting structure is an elongated loop having a terminal point midway along one of its longer sides. (See App. C) Folded dipoles have somewhat different characteristics than straight or simple dipoles, the primary differences being that folded dipoles have better performance over a greater bandwidth of frequencies and that folded dipoles have a greater resistance to the flow of electric current than do simple dipoles. This resistance to the flow of current is known as "impedence." In order to achieve the maximum transmission of the signal to the receiver, the impedence of the antenna, the transmission line and the receiver should be as nearly equal as possible. Television transmission line and receivers have an impedence set by FCC regulation at about 300 ohms. A simple dipole has an impedence of about 75 ohms while a folded dipole has an impedence of about 300 ohms.

posed feeder lines are also shown in the Koomans Patent (U. S. Patent No. 1,-964,189, the first page of which is attached hereto as Appendix D) and the Winegard Patent (U. S. Patent No. 2,-700,105, the first page of which is attached hereto as Appendix E), both of which are cited as prior art by the defendant. The White Patent (U. S. Patent No. 2,105,569, the first page of which is attached hereto as Appendix F) also uses transposed feeder lines in conjunction with dipole elements decreasing in length from one end of the array to the other. However, the White array is "center-fed," that is, connected to the down lead transmission line which leads to the receiver, at the center of the array, rather than at the end of the array. The antennas described in the Katzin, Koomans, and Winegard patents noted above and the "K. O." antenna, as well as the Isbell antenna, are all fed at the end of the antenna having the smaller elements.

The article cited by the defendant Winegard as prior art is "Logarithmically Periodic Antenna Designs" published by R. H. DuHamel and F. R. Ore on March 31, 1958. This article explains the elements of the theory of logarithmically periodic (log periodic) antennas and the development of several such antennas. Generally stated, log periodic antennas are designed according to the theory that an antenna "design cell" [11] having high performance characteristics for reception of a limited band or period of radio frequency signals, if altered in all dimensions by a constant scale factor will have high performance characteristics for reception of a band of signals having wavelengths which vary from the wavelengths of the first band of frequencies by the same constant scale factor. Thus, according to the theory, if an antenna design cell has certain characteristics for reception of particular frequency wavelengths, an antenna geometrically similar but reduced in all dimensions by a scale factor of .5 will have similar characteristics for reception of frequencies of wavelengths half those of the first. The theory continues that if a particular design cell is reduced successively by a constant scale factor which is less than 1, and repeated periodically in one antenna "array", the array will have the characteristics of the design cell over a broader band of frequencies which is limited only by the largest and smallest of the geometrically similar design cells which are repeated in the array. Because the performance of the antennas so designed is theoretically the same over any band of frequencies for which the antenna is designed the antennas are termed Frequency Independent Antennas. The application of this theory to antenna design appears to be limited only by the conditions that the design cell used must have uniform performance over a single period and that the overall array, the periodic repetition of the cell, not cause an "end effect" [12] that would destroy the frequency independence of the array.

The formula set out by DuHamel and Ore as defining the relationship be-

---

11. The term "design cell" is used herein to refer to a structural unit of an antenna which is capable of receiving and transmitting electromagnetic radio energy. A simple or folded dipole and an adjacent section of transmission line are examples of such antenna design cells. A particular antenna array may be composed of one or more similar or dissimilar design cells.

12. Very generally stated, "end effect" is a term used to describe a bouncing back and forth, from one end of an antenna array to the other, of any energy that is not fully transmitted or absorbed by the elements of the antenna as the energy travels initially along the antenna. This bouncing, or reflection, back and forth may cause shadows or ghosts in the reception of a television picture. Thus, in order to avoid this end effect an antenna should be designed to have sufficient elements to radiate or absorb all of the energy as it passes from one end of the antenna to the other so that there will be no such reflection of the energy back down the antenna.

tween the repeated, or periodic, design cells is: $\tau = \dfrac{R_{n+1}}{R_n}$, which defines a constant proportional relationship between like elements of the design. In this case the formula relates to the radii of circular structures. Of course, in the case of goeometrically similar designs all dimensions of one design are proportionally equal to all dimensions of the other similar designs. That is, they must all vary proportionally. The theory of the log periodic antenna was adopted by Isbell in his work and the formula, $\tau = \dfrac{L_{(n+1)}}{L_n} = \dfrac{\Delta S_{(n+1)}}{\Delta S_n}$ where $\tau$ is a constant having a value of less than 1, can be seen to be a simple adaptation of the DuHamel-Ore formula [13] and its mathematical equivalent.

### The Invalidity of the Patent

Keeping in mind the prior art previously discussed, it can be seen that an antenna with the general parameters of the Isbell Patent will result from a combination of the dipole array of Katzin with the transposed feeder line of the Channel Master "K. O." or the Koomans or Winegard Patents. Such an antenna would consist of a coplanar side-by-side array of straight dipole elements of differing lengths which decrease in length and spacing from one end of the array to the other (as disclosed by claims 7 and 11 of the Katzin patent), fed at the small end of the array by a two conductor transmission line that is transposed between successive elements (as disclosed by the Koomans and Winegard Patents and the Channel Master "K. O." antenna). Further, if the length and spacing of the dipole elements in such an antenna are adjusted by the log periodic theory of antenna design which dictates that the periodic or repeating cells (here a dipole element and adjoining section of transmission line) shall be geometrically similar and related to each other in size by a constant scale factor, the result is the Isbell antenna disclosure. It is thus apparent that the Isbell antenna is a combination of elements, all known in the prior art and also that these known elements were combined in the Isbell antenna in a manner dictated by a theory also known in the prior art. Therefore, the critical question is whether such a combination would have been obvious to one reasonably skilled in the art of antenna design. United States v. Adams, supra, 383 U.S. at 50–52, 86 S.Ct. 708, 15 L.Ed.2d 572; Kell-Dot Indus., Inc. v. Graves, 361 F.2d 25, 30 (8th Cir., 1966); American Infra-Red Radiant Co. v. Lambert Indus., Inc., supra, 360 F.2d at 988. Those skilled in the art at the time of the Isbell application knew (1) the log periodic method of designing frequency independent antennas, (2) that antenna arrays consisting of straight dipoles with progressively varied lengths and spacings exhibit greater broad band characteristics than those consisting of dipoles of equal length and spacing and, (3) that a dipole array type antenna having elements spaced less than ½ wavelength apart could be made unidirectional in

13. While DuHamel and Ore defined circular structures by relating the radii of different parts of one cell to the radii of another, Isbell has defined linear structures by relating the lengths and spacings of one design cell to another. That these are alternative means of expressing the same mathematical relationship is evident from an examination of Figure 1 of the Isbell patent and the discussion, found in Col. 1, line 63 to Col. 2, line 2 of the patent, relative to the distance from the base line O, in Figure 1, to the dipole having the length Ln. If the distance from the base line O to dipole having the length Ln were the radius of a circle having its axis at line O and its circumference tangent to the same dipole, the distance represented by Xn ("the distance from the base line O to the dipole having the length Ln", see Col. 1, lines 71–72 of Appendix A) would be equal to Rn, where Rn is the radius of the said circle having its axis at O and its circumference tangent to the dipole of length Ln; then, it is easily seen that the formulas $\tau = \dfrac{R_{n+1}}{R_n}$ (Isbell) and $\tau = \dfrac{X_{(n+1)}}{X_n}$ (DuHamel & Ore) are different but equal mathematical expressions of the same proportional relationship.

radiation pattern by transposing the feeder line between elements and feeding the array at the end of the smallest element.

■■ It is the opinion of the Court that it would have been obvious to one ordinarily skilled in the art and wishing to design a frequency independent unidirectional antenna to combine these three old elements, all suggested by the prior art references previously discussed.[14] The test of obviousness is the proper test to be applied in determining whether a new combination of known elements is patentable. American Infra-Red Radiant Co. v. Lambert Indus., Inc., supra, 360 F.2d at 988. When one skilled in the art with the prior art references before him could have, without the exercise of inventive faculty, combined old elements known in the art to produce the plaintiff's "invention," the "invention" does not rise to the level of patentability notwithstanding the fact that it may be an improvement over the prior art. Kell-Dot Indus., Inc. v. Graves, supra, 361 F.2d at 29. The Court, upon full consideration of the record herein, finds that the disclosure of Isbell's Patent No. 3,210,767 is lacking in the prerequisite nonobviousness and is, therefore, invalid.

■ Inasmuch as an invalid patent cannot be infringed Imperial Stone Cutters, Inc. v. Schwartz, supra, 370 F.2d at 429; Kell-Dot Indus., Inc. v. Graves, supra, 361 F.2d at 28, the question of infringement is rendered moot and is, therefore, not decided by this Court.

The foregoing shall constitute the findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

It is ordered that judgment will be entered for the defendant with costs, exclusive of attorney's fees, taxed to the plaintiff.

---

14. It should also be noted that the File Wrapper of the Isbell patent indicates that on November 9, 1960, all original 9 claims (final claims 1–8 and another never approved) were initially rejected by examiner G. N. Westby as being met by Katzin (Patent No. 2,192,532, App. C) in view of other patents teaching the crossing of the feeder line and the use of straight tubular conductors. On May 10, 1961, Isbell submitted an amendment to the Patent Office wherein he argued that

"there is certainly no teaching or suggestion in the Katzin patent of an arrangement in which *both* the length of successive dipoles *and* the spacing between said dipoles vary in a manner *such that the ratio of the length of adjacent dipoles is a constant which is also equal to the ratio of the spacings between adjacent dipoles.* Unless both of these conditions are met the antenna does not have the remarkably wide band paths, the high gain and the directivity exhibited by the antennas of the invention." (Emphasis in the original).

Subsequently, original claims 1–8 were allowed by examiners H. K. Saalbach and Eli Lieberman as were 7 additional claims added as a result of an interference proceeding and further amendments by the applicant. It appears, thus, that the above argument in regard to the constant proportional relationship of the lengths and spacings of the elements and the importance of such relationship convinced the Patent Office that the Isbell disclosure was patentable. However, there is nothing in the file wrapper to indicate that, in ruling on the patentability of the Isbell patent, the patent examiners considered the published work of DuHamel and Ore, the formula set out therein, or the log periodic theory of antenna design all of which was a part of the prior art at the time of the application. Reference was made thereto in the interference proceedings as indicated in PX–68.

420

APPENDIX A

PLAINTIFF'S EXHIBIT 31

Oct. 5, 1965     D. E. ISBELL     3,210,767

FREQUENCY INDEPENDENT UNIDIRECTIONAL ANTENNAS

Filed May 3, 1960     2 Sheets—Sheet 1

INVENTOR.
Dwight E. Isbell
BY

Merriam, Smith & Marshall
ATTORNEYS

PLAINTIFFS
Exhibit 31
Cause No. 3-695-D, Civil
Date FEB 13 1967
U. S. District Court
Southern Dist. of Iowa

Oct. 5, 1965    D. E. ISBELL    3,210,767

FREQUENCY INDEPENDENT UNIDIRECTIONAL ANTENNAS

Filed May 3, 1960    2 Sheets—Sheet 2

*Fig. 2*

INVENTOR.
Dwight E. Isbell
BY

*Merriam, Smith & Marshall*
ATTORNEYS

# United States Patent Office

3,210,767
Patented Oct. 5, 1965

1

2

3,210,767
FREQUENCY INDEPENDENT UNIDIRECTIONAL
ANTENNAS
Dwight E. Isbell, Seattle, Wash., assignor to The University of Illinois Foundation, a non-profit corporation of Illinois
Filed May 3, 1960, Ser. No. 26,589
15 Claims. (Cl. 343—792.5)

This invention relates to antennas, and more particularly, it relates to antennas having unidirectional radiation patterns that are essentially independent of frequency over wide bandwidths.

The antennas of the invention are coplanar dipole arrays consisting of a number of dipoles arranged in side-by-side relationship in a plane, the length and the spacing between successive dipoles varying according to a definite mathematical formula, each of the dipoles being fed by a common feeder which introduces a phase reversal of 180° between connections to successive dipoles. The antennas of the invention provide unidirectional radiation patterns of constant beamwidth and nearly constant input impedances over any desired bandwidth.

The invention will be better understood from the following detailed description thereof taken in conjunction with the accompanying drawing, in which:

FIGURE 1 is a schematic plan view of an antenna made in accordance with the principles of the invention;

FIGURE 2 is an isometric view of a practical antenna embodying the invention; and

FIGURES 3 and 4 are radiation patterns of a typical antenna, in the E plane and H plane, respectively.

Referring to FIGURE 1, it will be seen that the antenna of the invention was composed of a plurality of dipoles 10, 11, 12, etc., which are coplanar and in parallel, side-by-side relationship. It will be noted that the lengths of the successive dipoles and the spacing between these dipoles is such that the ends of the dipoles fall on a pair of straight lines which intersect and form an angle $\alpha$. In the preferred embodiment the antenna is symmetrical about a line passing through the midpoints of the dipoles, as shown.

The antenna is fed at its narrow end from a conventional source of energy, depicted in FIGURE 1 by alternator 13, by means of a balanced feeder line consisting of conductors 14 and 16. It will be seen that the feeder lines 14 and 16 are alternated between connections to consecutive dipoles, thereby producing a phase reversal between such connections.

The lengths of the dipoles and the spacing between dipoles are related by a constant scale factor $\tau$ defined by the following equations:

$$\tau = \frac{L_{(n+1)}}{L_n} = \frac{\Delta S_{(n+1)}}{\Delta S_n}$$

where $\tau$ is a constant having a value less than 1, $L_n$ is the length of any intermediate dipole in the array, $L_{(n+1)}$ is the length of the adjacent smaller dipole, $\Delta S_n$ is the spacing between the dipole having the length $L_n$ and the adjacent larger dipole, and $\Delta S_{(n+1)}$ is the spacing between the dipole having the length $L_n$ and the adjacent smaller dipole.

It will be seen from the geometry of the antennas, as given above, that the distance from the base line 0 at the vertex of the angle $\alpha$ to the dipoles forming the array are defined by the equation:

$$\tau = \frac{X_{(n+1)}}{X_n}$$

where $X_n$ is the distance from the base line 0 to the dipole having the length $L_n$, $X_{(n+1)}$ is the corresponding distance from the base line to the adjacent smaller dipole, and $\tau$ has the significance previously given.

The radiation pattern of the antennas of the invention, having the geometrical relationship among the several parts as defined above, is unidirectional in the negative X direction, i.e., extending to the left from the narrow end of the antenna of FIGURE 1.

The construction of an actual antenna made in accordance with the invention is shown in FIGURE 2. In this antenna the balanced line consists of two closely-spaced and parallel electrically conducting small diameter tubes 17 and 18 to which are attached the dipoles, each of which consists of two individual dipole elements, e.g., 19 and 19a, 21 and 21a, etc. It will be noted that each of the two elements making up one dipole is connected to a different one of said conductors 17 and 18, in a direction perpendicular to the plane determined by said conductors 17 and 18. Moreover, considering either one of the conductors 17 and 18, consecutive dipole elements along the length thereof extend in opposite directions. It will be seen that this construction has the effect of alternating the phase of the connection between successive dipoles, as depicted schematically in FIGURE 1. Although the dipoles of FIGURE 2 are not precisely coplanar, differing therefrom by the distance between the parallel conductors, in practice this distance is very small so that the dipole elements are substantially coplanar and the advantages of the invention are maintained. The antenna of FIGURE 2 may be conveniently fed by means of a coaxial cable 22 positioned within conductor 18, the central conductor 23 thereof extending to and making electrical connection with conductor 17 as shown.

As an example of the invention, an antenna of the type shown in FIGURE 2 was constructed using 0.125 inch diameter tubing for the balanced line and 0.050 inch diameter wire for the elements. The elements were attached to the feeder line with soft solder, and the array was fed with miniature coaxial cable inserted through one of the balanced line conductors. The antenna was defined by the parameters $\tau = 0.95$ and $\alpha = 20°$. The antenna had a total of 15 dipoles, with the longest dipole element being 2½″ long, while the shortest element was one-half of this length, or 1¼″. The array was 7½″ long.

Typical radiation patterns for the above-described antenna in the E plane and the H plane are shown in FIGURES 3 and 4, respectively. These patterns were found to remain essentially constant over the band of about 1100 to 1800 mc./sec. The minimum front-to-back ratio over this band was 17 db and the directivity over the range from about 1130 to 1750 mc./sec. was better than 9 db over isotropic.

The performance of the above-described antenna clearly indicates that the antennas of the invention provide excellent rotatable beams for use particularly in the HF to UHF spectrum. In comparison to the well-known parasitic types of antennas which bear some resemblance to those of the invention, such as the Yagi array, the antennas of the invention provide a much wider bandwidth with essentially comparable directivity. Advantageously, however, the antennas of the invention need no adjusting for their performance over a wide bandwidth, compared to the parasitic types which must be adjusted by cut-and-try procedures for each frequency. Further experimental work with other antennas similar to that described above has indicated that the preferred values for the parameters which define the antennas of the invention include a range of values for angle $\alpha$ between about 20° and 100°, with $\tau$ having a value between about 0.8 and about 0.95. When these parameters have values within the preferred ranges the antennas were

3,210,707

found to have essentially frequency independent performance over any desired bandwidth. The upper and lower limits of the bandwidths may be adjusted as desired by fixing the lengths of the longest dipole and the shortest dipole, respectively. It has been determined experimentally that the longest dipole element should be approximately 0.47 wavelength long at the lower limit and the shortest element should be about 0.38 wavelength long at the upper limit. Moreover, in order to provide a suitable front-to-back ratio at the low frequency limit, there should be at least 3 dipoles in the array and preferably about 10 to 30 dipoles.

The foregoing detailed description has been given for clearness of understanding only, and no unnecessary limitations should be understood therefrom, as modifications will be obvious to those skilled in the art.

What is claimed is:

1. A broadband unidirectional antenna comprising an array of substantially coplanar and parallel dipoles of progressively increasing length and spacing in side-by-side relationship, the ratio of the lengths of any two adjacent dipoles being given by the formula

$$\frac{L_{(n+1)}}{L_n} = \tau$$

where $L_n$ is the length of any intermediate dipole in the array, $L_{(n+1)}$ is the length of the adjacent smaller dipole and $\tau$ is a constant having a value less than 1, the spacing between said dipoles being given by the formula

$$\frac{\Delta S_{(n+1)}}{\Delta S_n} = \tau$$

where $\Delta S_n$ is the spacing between the dipole having the length $L_n$ and the adjacent larger dipole, $\Delta S_{(n+1)}$ is the spacing between the dipole having the length $L_n$ and the adjacent smaller dipole, and $\tau$ has the significance previously assigned, said dipoles being fed in series by a common feeder which alternates in phase between successive dipoles.

2. The array of claim 1 which is symmetrical about a line passing through the midpoint of each dipole in the array.

3. A broadband unidirectional antenna comprising an array of a plurality of substantially coplanar and parallel dipoles of progressively increasing length in side-by-side relationship, the ends of said dipoles falling on a V-shaped line forming an angle $\alpha$ at its vertex, the ratio of the lengths of any pair of adjacent dipoles being given by the formula

$$\frac{L_{(n+1)}}{L_n} = \tau$$

where $L_n$ is the length of the longer dipole of the pair, $L_{(n+1)}$ is the length of the shorter dipole, and $\tau$ is a constant having a value less than 1, the dipoles in said array being fed in series by a common feeder which alternates 180° in phase between successive dipoles.

4. The antenna of claim 3 in which the angle $\alpha$ has a value between about 20° and 100° and the constant $\tau$ has a value between about 0.8 and 0.95.

5. The antenna of claim 3 in which said feeder is a balanced line which twists 180° between the connections to successive dipoles.

6. A broadband unidirectional antenna comprising a balanced feeder line consisting of two closely spaced, straight and parallel conductors, a plurality of dipoles each consisting of two dipole elements, one of which elements is connected to one of said conductors, the other element being connected directly opposite the first to the other of said conductors, the elements of any dipole extending in opposite directions perpendicular to the plane determined by said conductors, consecutive dipole elements on each of said conductors extending in opposite directions, the ratio of the lengths of the elements in any two adjacent dipoles being given by the formula

$$\frac{l_{(n+1)}}{l_n} = \tau$$

where $l_n$ is the length of an element of any dipole in the antenna, $l_{(n+1)}$ is the length of an element in the adjacent smaller dipole and $\tau$ is a constant having a value less than $l$, the spacing between said dipoles being given by the formula

$$\frac{\Delta S_{(n+1)}}{\Delta S_n} = \tau$$

where $\Delta S_n$ is the spacing between the dipole having the element length $l_n$ and the adjacent larger dipole, $\Delta S_{(n+1)}$ is the spacing between the dipole having the element length $l_n$ and the adjacent smaller dipole, and $\tau$ has the significance previously assigned.

7. The antenna of claim 6 wherein $\tau$ has a value of about 0.8 to 0.95.

8. The antenna of claim 6 wherein said feeder line conductors are tubular.

9. An aerial system including at least one set of parallel dipoles spaced along and substantially perpendicular to the longitudinal axis of a two-conductor balanced feeder to which the halves of the dipoles are connected at their inner ends, said dipoles being of different electrical lengths increasing substantially logarithmically from the connected end of the feeder to the other end and the dipole feeder connections being crossed over one another between adjacent dipoles, the spacings between which also increase substantially logarithmically from said connected end to the other end.

10. An antenna system for wide-band use comprising a plurality of substantially parallel conducting dipole elements arranged in substantially collinear pairs, the opposite dipole elements of each pair constituting dipole halves, a two-conductor balanced feeder having one conductor connected to each of said elements at substantially the inner end thereof, each of said dipole halves in a pair being connected to a different feeder conductor, adjacent dipole elements being reversely connected to different conductors of the feeder, said dipole elements being selectively spaced along and substantially perpendicular to said feeder, the elements of each pair being of substantially equal length, adjacent dipole elements of different pairs differing in length with respect to each other by a substantially constant scale factor, the selective spacings between adjacent dipoles generally decreasing from one end of the feeder to the other with the greatest spacing being between the longest dipoles, and means to connect the feeder to an external circuit at substantially the location of the smallest of the dipole elements.

11. An antenna system for wide-band use comprising a plurality of substantially parallel conducting dipole elements arranged in substantially collinear pairs, the opposite dipole elements of each pair constituting dipole halves, a two-conductor balanced feeder having one conductor connected to each of said elements at substantially the inner end thereof, each of said dipole halves in a pair being connected to a different feeder conductor, adjacent dipole elements being reversely connected to different conductors of the feeder, said dipole elements being selectively spaced along and substantially perpendicular to said feeder, the elements of each pair being of substantially equal length, adjacent dipole elements of different pairs differing in length with respect to each other by a substantially constant scale factor, the selective spacings between the dipoles along the feeder differing from each other also by a substantially constant scale factor, the greatest spacing being between the longest dipoles, and means to connect the feeder to an external circuit at substantially the location of the smallest of the dipoles.

12. The aerial system of claim 11 in which said scale

3,210,767

factors have values within the range from about 0.8 to about 0.95.

13. An antenna system for wide-band use comprising an array of at least three linear substantially parallel conducting dipoles, each dipole being composed of two opposite substantially collinear conducting elements, a two-conductor balanced feeder having one conductor connected to each of said elements at substantially the inner end thereof, adjacent parallel dipole elements being reversely connected to a different conductor of the feeder, the two elements of each dipole being of substantially equal length and successive elements being of lengths which differ from one dipole to the next by a substantially constant scale factor within the range from about 0.8 to about 0.95, the dipoles being spaced from each other in a generally decreasing manner in the direction of decreasing element length, and means to connect the feeder conductors to an external circuit at substantially the location of the smallest dipole elements.

14. An antenna system for wide-band use comprising a minimum of three pairs of linear substantially parallel conducting elements arranged substantially coplanarly, each pair being substantially collinear and comprising the halves of a dipole, a two-conductor feeder connected to the inner ends of said collinear pairs of elements, adjacent parallel elements being connected to different conductors of the feeder so that the halves of the dipoles connect to different conductors of the feeder and adjacent dipoles are reversely connected, the halves of each dipole being substantially the same length, adjacent dipole elements being selectively spaced from each other along the feeder, the length of the successive dipole elements along the feeder decreasing in accordance with a substantially constant scale factor, each dipole and the feeder between it and the adjacent dipole constituting a cell, the dimension of the several cells measured from the point of connection of one dipole and the feeder to the outer end of the next smaller adjacent dipole also decreasing from one cell to the next in the direction of decreasing dipole length according to a substantially constant scale factor so that the combination of cells provides a substantially uniform wide-band response, and means to connect an external circuit to the feeder elements at substantially the location of the shortest of the dipoles.

15. An antenna system for wide-band use comprising a minimum of three pairs of substantially parallel and coplanar linear conducting elements arranged in substantially collinear pairs, each pair of elements comprising the halves of a dipole, a two-conductor feeder, one conductor of which is connected to each of said elements substantially at the inner end thereof; adjacent parallel elements being connected to different conductors of the feeder so that the halves of the dipoles connect to different conductors of the feeder and adjacent dipoles are reversely connected, the halves of each dipole being substantially the same length, adjacent dipole elements being selectively spaced from each other along the feeder, the lengths of the elements decreasing from one end of the feeder to the other substantially in accordance with a substantially constant scale factor within the range from about 0.8 to 0.95, each dipole and the feeder between it and the adjacent dipole constituting a cell, the cell dimension from the inner end of one dipole to the outer end of the next smaller adjacent dipole also generally decreasing from one cell to the next in the direction from the longer to the shorter dipoles so that the combination of cells provides a substantially uniform wide-band response, and means to connect an external circuit to the feeder elements at substantially the location of the shortest of the dipoles.

### References Cited by the Examiner
#### UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| 2,192,532 | 3/40 | Katzin | 343—811 |
| 2,507,225 | 5/50 | Scheldorf | 343—814 X |

#### FOREIGN PATENTS

| | | |
|---|---|---|
| 1,023,498 | 1/58 | Germany. |
| 408,473 | 4/34 | Great Britain. |

HERMAN KARL SAALBACH, *Primary Examiner.*

GEORGE N. WESTBY, ELI LIEBERMAN, *Examiners.*

March 5, 1940.    M. KATZIN    2,192,532

DIRECTIVE ANTENNA

Filed Feb. 3, 1936

**Fig. 1**

**Fig. 2**

**Fig. 3a**

**Fig. 3b**

**Fig. 3c**

**Fig. 4**

**Fig. 3d**

INVENTOR.
MARTIN KATZIN

BY    H.B.Grover

ATTORNEY.

DX / E-4

APPENDIX C

CHANNEL MASTER
"K.O"-model 1023

APPENDIX D

June 26, 1934.  N. KOOMANS  1,964,189

DIRECTIVE ANTENNA

Filed Sept. 11, 1928

*Fig. 1.*

*Fig. 2.*

Inventor:
N. Koomans
By
Langner, Parry, Card
Atty.

Jan. 18, 1955          J. R. WINEGARD          2,700,105
                      T. V. ANTENNA ARRAY

Filed July 26, 1954                          2 Sheets-Sheet 1

*FIG. 1*

*FIG. 2*

*FIG. 3*

INVENTOR.
John R. Winegard
BY:
Barr, Freeman & Molinare
Atty's.

DX
D-1

APPENDIX F

Jan. 18, 1938.    E. L. C. WHITE ET AL    2,105,569

DIRECTIONAL WIRELESS AERIAL SYSTEM

Filed April 6, 1936

Fig. 1.

Fig. 2.

Fig. 3.

INVENTORS
E. L. C. WHITE
W. S. PERCIVAL

BY

ATTORNEY

DX
E-3